(Nos. 10642-10643.—Writ denied.)

THE PEOPLE *ex rel.* Jesse Holdom, Petitioner, *vs.* ROB-
ERT M. SWEITZER, County Clerk, Respondent.—THE
PEOPLE *ex rel.* Frederick A. Smith, Petitioner, *vs.* ROB-
ERT M. SWEITZER, County Clerk, Respondent.

*Opinion filed October 23, 1917.*

1. CONSTITUTIONAL LAW—*constitutional provision against an in-
crease of salary during term of office includes officers elect.* The
constitutional provision prohibiting any increase of salary of offi-
cers during their terms of office applies to officers who have been
elected and are sure of holding office as well as to those in office.

2. OFFICES—*term of an elective office begins on date of election
when not otherwise fixed.* The term of an elective office, when not
fixed as to the date of its beginning and ending by a constitution
or statute, begins on the date of the election, and the fact that when
an officer "holds over" the holding over is considered a part of the
original term does not change the lawful term. (*People* v. *Callag-
han,* 83 Ill. 128, and *Crook* v. *People,* 106 id. 237, distinguished.)

3. SAME—*terms of office of circuit judges begin on date of elec-
tion.* The terms of office of circuit judges and of all the additional
circuit judges of Cook county, as provided by different statutes,
begin on the day of the judicial election, whether or not the per-
son elected to the office has received his commission and qualified.
(*People* v. *Callaghan,* 83 Ill. 128, distinguished.)

4. SAME—*public office is presumed to be continuously filled un-
til it is abolished.* In legal contemplation an office that has once
been created is necessary, and it is never vacant but is presumed
to be continuously filled until it is abolished.

5. ELECTIONS—*the State canvassing board cannot recall com-
missions issued.* Neither the Governor nor the State canvassing
board can recall and cancel commissions issued after canvassing
the election returns.

6. SAME—*county canvassing board may meet and send in omit-
ted abstract of votes but cannot change abstracts sent in.* Where
the county canvassing board has sent to the State canvassing board
the election returns for circuit judges but has omitted to send in
the abstract of votes for judge of the Supreme Court, their action
in holding another meeting to send in said abstract is not improper
as it is simply a completion of their duties, but they have no power
to make any change in the abstracts of votes for circuit judges.

CARTER, C. J., separate opinion.

ORIGINAL petition for *mandamus.*

GREGORY, BURGES & McNAB, and HOLT, CUTTING & SIDLEY, (S. S. GREGORY, and CHARLES S. CUTTING, of counsel,) for petitioners.

MACLAY HOYNE, State's Attorney, and CHARLES CENTER CASE, JR., for respondent.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Pursuant to leave granted, the relator Jesse Holdom filed in this court his original petition for *mandamus,* praying that the writ be directed to the respondent, as county clerk of Cook county, commanding him to draw a warrant for the amount of salary to which the relator claimed to be entitled by reason of an act of the General Assembly of June 24, 1915, increasing the salaries of the judges of the circuit and superior courts of Cook county thereafter to be elected or who had been elected but whose terms of office had not yet commenced. The respondent answered the petition and the relator filed his replication to the answer, and the cause was referred to a commissioner to take the evidence of the parties on the averments of the petition, answer and replication and report the same to the court, and the commissioner heard the evidence of the parties and has certified the same to the court. Frederick A. Smith, on leave being granted, filed a similar petition seeking the same relief against the same respondent, and there was a similar answer, a replication and reference. The cases were consolidated and heard together. The only difference in the two cases is that Judge Holdom claims to have been elected as one of six additional judges provided by an emergency act in force April 28, 1915, which will be hereafter referred to, while Judge Smith had served a preceding term and was elected to succeed himself.

There is no dispute as to the facts, the only questions involved being those of law. In brief, it appears from the

pleadings and evidence that the relator in each case was a candidate for election to the office of judge of the circuit court of Cook county at the election held on the first Monday in June, being June 7, 1915, and, as thereafter appeared from the canvass of the votes cast at that election, was duly elected to that office. At the same election there were elected one judge of the Supreme Court for the seventh judicial district, twenty judges of the circuit court of Cook county, one judge of the superior court of Cook county to fill a vacancy, and one judge of the superior court for the full term. Certain propositions were also submitted and voted on. The votes cast in the city of Chicago and town of Cicero were duly canvassed by the county judge, the State's attorney and the board of election commissioners of the city of Chicago and were by them duly certified to the county clerk of Cook county. Certified copies of abstracts of the results were duly filed with the county canvassing board prior to June 22, 1915. The votes cast in the county outside of the city of Chicago and the town of Cicero were duly canvassed by the county clerk of the said county and two justices of the peace of the county, as provided by law. The canvass was completed on June 22, 1915, and a copy of the abstracts of the votes was on that day made and transmitted to the Secretary of State by the county clerk and was received and filed by the Secretary of State on June 23, 1915. The Secretary of State, the Auditor, the Treasurer and Attorney General of the State, in the presence of the Governor, on June 24, 1915, canvassed said votes and declared the relators and eighteen others duly elected judges of the circuit court of Cook county, and on the same day the Governor caused a proclamation to be made of the result of said canvass, declaring the relators and the others elected judges of the circuit court of Cook county, and on the same day the commissions of the relators and the others so proclaimed elected as circuit judges were signed by the Governor and issued. These

commissions on June 24 were mailed by the Secretary of State to the county clerk for delivery to the respective judges entitled thereto, with instructions from the Secretary of State to collect his fees for issuing such commissions and forward the same with the oaths of office of those to whom such commissions were issued. In forwarding the abstracts of votes on June 22 the county clerk neglected to include the abstract of votes for judge of the Supreme Court and also the vote on certain propositions that had been submitted. On June 22 the county clerk wrote to the Secretary of State, enclosing amended and corrected abstracts of votes showing the correct totals which were different from the abstracts sent in as to three of the candidates but did not change the results. On June 23 the county clerk telegraphed the Secretary of State not to use the abstracts of the votes he had mailed as they were incomplete and not properly drawn and requesting that the same be returned, and stating that he had called a meeting of the canvassing board to make corrections and supply omissions and make new certifications. On June 24 the Secretary of State telegraphed the county clerk that the meeting of the State canvassing board had been held and the commissions of the judges were in the mail addressed to him and expressing regret that he had not seen fit to attend the meeting of that board and make corrections as requested by wire. There was further correspondence between the county clerk and the Secretary of State and communications by telephone and telegraph, the county clerk stating, in effect, that the abstracts of votes mailed by him on the 22d were incomplete, as not including any votes for judge of the Supreme Court nor abstracts of the votes on certain propositions submitted at the election, and that the names of certain candidates who had received votes for judges of the circuit court and judge of the Supreme Court had been omitted therefrom, and requesting a return of the incomplete abstracts so that the county canvassing board might

send in complete and full abstracts. On June 28 the Secretary of State replied that the State canvassing board having acted upon the returns sent to it as to circuit and superior court judges and commissions having been issued to the elected judges, it was impossible to return the papers already acted upon and the same were on file in his office, and that that was the position taken by the State canvassing board. He advised the clerk to forward the abstract of votes for judge of the Supreme Court and on the propositions which were voted on relating to Cook county. On July 1, 1915, the county clerk forwarded so-called complete election returns and corrected abstracts of votes of Cook county. These abstracts and returns were filed in the office of the Secretary of State, and pursuant to an opinion by the Attorney General that the State canvassing board not having received the complete returns in the first instance it could not adjourn, and that the incomplete returns were no returns at all and it was proper for the State canvassing board to make a canvass of the complete returns and issue proper certificates of election or commissions to the judge of the Supreme Court and judges of the circuit and superior courts, on July 13 the State canvassing board proceeded to canvass the returns mailed by the county clerk on July 1 in the presence of the Governor, who on completion thereof published his proclamation declaring the relators and the others duly elected, and on the same day, July 13, 1915, new commissions were respectively issued to relators and the others elected. The commissions dated June 24, 1915, were returned, and across the face of each of said commissions was written the following memorandum: "July 13, 1915.—This commission canceled by order of the State canvassing board.—Lewis G. Stevenson, Secretary of State."

The amendment to the law increasing the salaries of judges of the circuit and superior courts of Cook county was passed by the General Assembly and was approved by the Governor June 24, 1915, and was in force and effect

on and after July 1, 1915. (Laws of 1915, p. 442.) Section 1 of the act is as follows: "The judges of the circuit and superior courts of Cook county, hereafter to be elected or who have been elected but whose terms of office have not yet commenced, shall each be paid by the said county, in addition to the salaries which may be paid to them from the State treasury, such further compensation as will make their respective salaries amount to the sum of $12,000 per annum."

It is the claim of each relator that his term of office commenced when his commission of July 13 was issued and when he qualified by signing and forwarding his oath, and not before. Each relator testified that he never received his commission dated June 24 and did not know of its existence.

It is first contended by counsel for respondent that the legislative enactment increasing the salaries is unconstitutional; and second, assuming the act to be constitutional, or in part constitutional, that the relators do not come within the terms of the act. The act is constitutional as to all judges elected after the act went into effect. The legislature has the power, under section 16 of article 6 of the present constitution, to fix the salaries of judges of the circuit court, subject to the limitation that such salaries shall not, after being fixed by law, be increased or diminished during the terms for which said judges shall, respectively, be elected. The legislature also has the power, under section 25 of article 6 of the constitution, to increase the compensation of judges of the circuit court of Cook county to be paid by that county, said section being as follows: "The judges of the superior and circuit courts, and the State's attorney, in said county, shall receive the same salaries, payable out of the State treasury, as is or may be paid from said treasury to the circuit judges and State's attorneys of the State, and such further compensation, to be paid by the county of Cook, as is or may be provided by law; such

compensation shall not be changed during their continuance in office." The legislature has exercised this power at different times and it has never been questioned. As to whether the act would apply to those "who have been elected but whose terms of office have not yet commenced" when the act went into effect raises a serious question. The constitution expressly prohibits the legislature from increasing the salaries of circuit judges, and, in fact, of all State officers, during the terms for which they are elected. The theory of the framers of the constitution was to make the three branches of government, the legislative, executive and judicial, separate and independent of each other, as far as possible. The power to fix the salaries of State officers is in the legislative branch of the government, the duty to enforce acts of the legislature is in the executive branch, and the power to construe the acts of the legislature is in the judiciary. The acts of the officers of each branch, while such officers are in power, should not be made to depend upon or be influenced by the acts of another branch, nor should there be anything in the conduct of either that would even give rise to a suspicion of such a thing as coercion by reducing salaries or a reciprocal interchange of favors by increasing salaries, hence the reason for the constitutional provision putting it beyond the power of the legislature to increase or diminish the salaries of State officers in office and in power. This is fully borne out by the Debates and Proceedings of the Constitutional Convention as reported in volume 1, pages 1015, 1018, 1019, 1020, 1058 and 1059, in which the practices which had theretofore obtained in securing, or attempting to secure, increases in salaries by certain State officers were set forth forcibly and at length. It must be conceded, on principle, that there is just as much reason for a constitutional provision prohibiting an increase in the salaries of officers who have been elected to office and who are sure of holding office but whose terms have not commenced, as there is prohibiting an increase in

salaries of those actually in office. The relators in this case had been elected before the bill increasing their salaries was passed by the legislature, and as to them and their associates elected at the same time it must be said that such enactment is clearly and unmistakably contrary to the spirit and intent of the constitution. But its application to relators does not depend on that point, alone.

The second contention depends upon the further contention of respondent that the relators' terms of office as fixed by law began on the date of their election and the law increasing salaries went into effect after that time, and the real question involved depends upon the construction of the act in connection with section 25 of article 6 of the constitution, *supra*. It will be seen that all judges of the circuit court, including those of Cook county, receive a salary from the State, fixed by the legislature, and that judges of the circuit court of Cook county receive, in addition thereto, a certain compensation from the county of Cook, which compensation is also fixed by the legislature. In *Foreman* v. *People*, 209 Ill. 567, we held that the portion of section 25, *supra*, "such compensation shall not be changed during their continuance in office," refers to the term and not to the occupant, and that there is no difference between that provision and other provisions of the constitution on the same subject. In that case a judge of the superior court was elected in 1899 for a term of six years, said term expiring in December, 1905. He held the office for a part of the term for which he was elected and then resigned, and another was elected at an election held in November, 1902, to fill the vacancy caused by said resignation and for the remainder of the term. Said successor qualified and entered upon the discharge of the duties of the office on November 24, 1902. It was held that a law which went into effect July 1, 1901, increasing the salaries of the judges of the circuit and superior courts of Cook county did not apply to such successor. The legislative enactment in question was simi-

lar to the one under consideration. Its material provision was, "that the judges of the circuit and superior courts of Cook county hereafter to be elected shall each be paid by the said county, in addition to the salaries which may be paid to them from the State treasury, such further compensation as will make their respective salaries amount to the sum of $10,000 per year." (Laws of 1901, p. 207.) It was further pointed out in that case that while no particular set of words is used in the constitution to express the limitation of the power of the legislature with reference to a change of salary during a term of office, there is a well defined rule running through the whole instrument that a salary attached to any public office having a fixed term shall not be increased or diminished during that term. Under the holding in the *Foreman case, supra,* if the terms of relators commenced before July 1, 1915, then any judge elected or appointed to fill a vacancy caused by the death or resignation of any one of the relators at any time prior to the year 1921 would not be entitled to the increase of salary provided by the law in question. The exact question raised by the second contention is, when do the terms of office of circuit judges in the State begin and end? A definite time is not fixed by the constitution of 1870 for the commencement of the terms of office of judges of the circuit court of Cook county or of those who are elected in other circuits of the State, as in the case of other State officers and county officers. The date of election of circuit judges is fixed by the constitution, and by the laws enacted pursuant thereto, as the first Monday in June of certain years. The duration of the term is fixed by the constitution as six years. The term of office as fixed by law is sometimes used interchangeably with the term or time of occupancy of the incumbent of such office, but it must be distinctly borne in mind that the term of office as fixed by law is entirely different from the period of time such office is held by the incumbent thereof, sometimes referred to as

the term. The general rule seems to be that the term of office, when not fixed as to the date of its beginning and ending by a constitution or statute, begins in the case of elective offices on the date of election. (28 Cyc. 1398; *State* v. *Constable,* 7 Ohio, 7; *Marshall* v. *Harwood,* 5 Md. 423; *Hughes* v. *Buckingham,* 5 S. & M. 632.) In *People* v. *Reinberg,* 263 Ill. 536, we held that in the case of an appointive office, when the law does not fix any time for the commencement of a term of office to be filled by appointment, the term will begin to run from the date of appointment.

Under the first constitution of the State (that of 1818) judges of the Supreme Court and inferior courts were appointed by the General Assembly and after 1824 held office during good behavior. A portion of the time while this constitution was in force the judges of the Supreme Court were required by law to hold circuit courts in addition to their duties as members of a court of appeal. At the time of the adoption of the constitution of 1848 the Supreme Court consisted of three judges, who were also holding circuit courts in the circuits of the State. Section 7 of article 5 of the constitution of 1848 provided that "the State shall be divided into nine judicial districts, in each of which one circuit judge shall be elected, * * * who shall hold his office for the term of six years, and until his successor shall be commissioned and qualified: *Provided,* that the General Assembly may increase the number of circuits to meet the future exigencies of the State." Section 13 provided that "the first election for justices of the Supreme Court and judges of the circuit courts shall be held on the first Monday of September, 1848." Section 15 provided that "on the first Monday of June, 1855, and every sixth year thereafter, an election shall be held for judges of the circuit courts: *Provided,* whenever an additional circuit is created, such provision may be made as to hold the second election of such additional judge at the regular elections herein provided." Section 5 of the sched-

ule provided that "at the first election fixed by the consti-
tution for the election of judges, there shall be elected one
circuit judge in each of the nine judicial circuits now es-
tablished in this State." The legislature that first met after
the adoption of the constitution of 1848 adopted an act ap-
proved February 12, 1849, the fourth section of which pro-
vided that on the first Monday of June, 1855, and every
sixth year thereafter, an election shall be held in each ju-
dicial circuit for the election of a judge for such circuit,
and that whenever an additional judicial circuit shall be
created, the first election of a judge for such circuit shall
be held at such time as the law creating such circuit shall
direct but whose term of office shall expire at the time fixed
for the next regular election of judges for the judicial cir-
cuits of the State. (Laws of 1849,—1st sess.—p. 71.) It
thus appears that the legislature construed the constitution
of 1848 with reference to the terms of judges of the cir-
cuit courts, that such terms began and expired with the
election. Not only that, but by positive legislative enact-
ment the beginning and expiration of the six year terms
were made contemporaneous with the dates of election.
The last election of circuit judges under the constitution
of 1848 was the first Monday in June, 1867, and accord-
ingly the terms of such judges expired the first Monday in
June, 1873. In *People* v. *Bangs,* 24 Ill. 184, it is said, re-
ferring to the case of *People* v. *Dubois,* 23 Ill. 547, and the
different provisions of article 5 of the constitution of 1848
above set out, on page 187 of the opinion: "Upon this
subject the legislature is expressly authorized to do two
things. One is to increase the number of circuits; and the
other is, in the event of the creation of a new circuit the
legislature may provide that the commission of the judge
first elected to supply such circuit shall expire at the next
regular election for circuit judges."

We have heretofore set out the provisions of the pres-
ent constitution relative to the election and terms of circuit

judges, and think it is to be inferred from the debates in the constitutional convention that the framers of the present constitution assumed the terms began with the election. (1 Debates and Proceedings of Constitutional Convention, 1017, 1059; 2 id. 1132.) It seems to have always been understood and assumed by the legislature that the terms of office of circuit judges began with the date of their election and ended at the date of election six years thereafter.

Section 23 of article 6 of the present constitution provides that the General Assembly may increase the number of circuit and superior court judges of Cook county by adding one to either of said courts for every additional 50,000 inhabitants of said county over and above a population of 400,000, and that the terms of office of the judges of said courts thereafter elected shall be six years. Pursuant to this provision of the constitution the legislature has from time to time increased the number of circuit and superior court judges of Cook county according to the increase of population. Accordingly, in the year 1887 a law was enacted in which it was provided that it appearing by the school census taken in the year 1886 that the number of inhabitants of the county of Cook was over 916,000, and that thereby the county was entitled, by section 23 of article 6 of the constitution, to six additional judges, an election be held on the first Monday of June next after the act shall take effect, for six additional judges of the circuit court, whose terms of office shall expire upon the first Monday in June, 1891, upon election and qualification of their successors in office, and that on said first Monday in June, 1891, and every six years thereafter, there shall be elected, at the same time and in the same manner as other judges of the said circuit court, six judges, successors in office of the judges in the act authorized to be elected. In 1893 another law was passed which provided that, as shown by the school census taken in 1892, the number of inhabitants of the county of Cook is over 1,500,000, and that thereby said

county is entitled, by section 23 of article 6 of the constitution, to additional judges, therefore the number of judges of the circuit court of the county of Cook be and hereby is increased from eleven, its present number, to fourteen, and that the number of the judges of the superior court of the county of Cook be and is hereby increased from nine, its present number, to twelve. The act further provided that three additional judges of the circuit court be elected on the Tuesday after the first Monday in November, 1893, and that the terms of office of said three additional judges of the circuit court should expire on the first Monday of June, 1897, upon the election and qualification of their successors in office, and that upon the first Monday of June, 1897, and every six years thereafter, there should be elected at the same time and in the same manner as other judges of the circuit court, three judges, successors in office of the circuit judges by the act authorized to be elected.

It will thus be seen by the aforesaid acts that by contemporaneous construction of the above section of the constitution by the legislature the terms of office of the additional judges provided for by the aforesaid acts were to expire at the date of election on the first Monday in June of the years of the regular judicial election. Moreover, the legislature, by the different acts passed up to 1893, by positive law fixed the expiration of the terms of all the additional circuit judges of Cook county as the day of the judicial election.

Another law was enacted in 1915 by the same legislature which passed the act under consideration increasing salaries, in consequence of the population of Cook county having increased to over 2,500,000 according to the Federal census of 1910, increasing the number of judges of the circuit court of Cook county from fourteen to twenty. Section 2 of the act provides: "On the first Monday of June in the year 1915, and every six years thereafter the

six additional judges of said circuit court herein provided for shall be elected to hold their offices for a term of six years and until their successors shall be elected and qualified." (Laws of 1915, p. 352.) This act was passed as an emergency act and took effect from and after its passage. It was approved April 28, 1915. In the instant case the relator Judge Holdom claims to have been elected as one of such additional judges. While this act did not fix the terms of office in the same manner or by the same language as did the acts of 1887 and 1893, its plain meaning, and the only meaning of which it is susceptible, is that the additional judges elected under that act were to be elected on the first Monday of June in the year 1915 and every six years thereafter, and the terms of their office should be six years, "and until their successors shall be elected and qualified." The words last above quoted clearly imply that if the said judges held over beyond election day they would be holding over beyond the terms for which they were elected and into the terms of their successors in office, for, as subsequently shown, there is nothing to prevent the judges so elected from qualifying and receiving their commissions as soon as the votes cast at the election are canvassed and the result is announced, which might be immediately after the election. Nor do we think it makes any difference whether Judge Holdom was elected as one of the additional judges provided by the act of 1915 or not. The main purpose and effect of the law of 1915 was to increase the number of judges, and in the present state of the record all that can be said is that the total number provided for by law were elected from among a large number of candidates. Unless all the former incumbents were candidates to succeed themselves and were all elected it could not be said who were the judges newly elected, in the sense that they did not succeed anyone in the office. In *People* v. *Barnes*, 255 Ill. 379, in construing a similar act increasing the number of judges of the superior court, we held that there was nothing in

280 – 29

the act to indicate that the additional judges should constitute a separate class or in any way differ from the judges already provided for. All these acts must be reconciled if possible, and uniformity demands that the terms of all circuit judges elected pursuant thereto must be the same, and the only construction of which they are susceptible is, that the terms of office as fixed by law run from election day, the first Monday of June,—the year of the judicial election,—to the first Monday of June six years later, and that the duration of such terms is six years from the date of the election of the judges elected and until their successors are elected and qualified. In *People* v. *Knopf,* 198 Ill. 340, we held that as the constitution does not fix the time for holding the election for the office of judge of the superior court of Cook county, the legislature may at any time increase the number of such judges when warranted by the population, and may also fix the time when additional judges are to be elected, provided the term of office fixed by the constitution is not changed. As has been seen, the constitution fixes both the time of election and the terms of circuit judges, (*People* v. *Knopf, supra,*) and the legislature cannot change the date for the election or the length of terms of circuit judges. But the legislature is not prohibited by the constitution from fixing the date when the term begins and when it ends, namely, the day of election, when such day of election and the duration of the term are the same as those fixed by the constitution. If this is true, then the terms of all circuit judges who were elected pursuant to the acts of 1887 and 1893 expired on the first Monday in June in 1915, and the terms of those elected on that date as fixed by law began on that day.

Much has been said about the provision contained in section 32 of article 6 of the constitution of 1870, that all officers mentioned in that article shall hold their offices until their successors shall be qualified, as showing that the term of a successor does not begin until he has qualified. Such

provision has nothing to do with the case. While it is true that when a person elected to office for a definite period or term for some reason holds over into the term of his successor the time of holding over is a part of his original term of office, still it must be conceded that the period which he does so hold over is exactly what is implied by the term "holding over," as being beyond the term fixed by law and into the term following to be filled by a successor. Such provision does not change the lawful term. (*State* v. *Galusha*, [Neb.] 104 N. W. Rep. 197.) There is a similar provision in regard to most elective offices, and various events might happen which would cause a holding over even when the duration of the term of office and the date when it begins and ends are definitely fixed independently of the time of election. For instance, it is a matter of recent history that the Governor and other State officers elected at the November election, 1912, did not take their offices at the date fixed by the constitution, the second Monday in January, 1913, nor for several days thereafter, owing to the failure of the legislature to organize and canvass the vote within the time prescribed. In legal contemplation an office that has once been created is necessary, and it is never vacant and is presumed to be continuously filled until it is abolished. Where there is no definite date fixed for the beginning of a term of office there is usually a short interim between the date of election and the date of qualification of the successful candidate. Such interim is of no fixed duration. It might be one day or a few days, depending upon when the judges of election in the different voting precincts complete the count of the votes cast, send in their returns to the proper authorities and the returns are canvassed and the result proclaimed, and such things necessarily depend upon inconsequential details, such as the number of votes cast, the time necessary to count them and make up the returns, the distance and means of travel between the voting places and the county seat, the distance

from the county seat to the capital, and to some extent upon the diligence of the canvassing boards.

Section 71 of chapter 46 (Hurd's Stat. 1916, p. 1118,) provides that within seven days after the close of the election the county clerks of the respective counties, with the assistance of two justices of the peace of the county, shall open the returns transmitted by the judges of election and make abstracts of the votes and transmit the same, in the case of State officers, judges of the circuit courts, etc., to the Secretary of State; and section 78 provides that the Secretary of State, Auditor, Treasurer and Attorney General, or any two of them, shall proceed within twenty days after the election, and sooner if all the returns are received, to canvass such votes, and that the persons having the highest number of votes for the respective offices shall be declared duly elected, and that the Governor shall give a certificate of election or commission, as the case may require, and shall cause proclamation to be made of the result of the canvass, etc.

It will thus be seen that the votes must be canvassed and the result declared after the election, but such canvass must not be later than twenty days. It could be the day after election, so far as the law is concerned. Of course, one who was declared elected to an office would not assume the duties of such office until his commission was issued and he had taken the oath of office, where such oath is required, after which time he would be fully qualified and competent to act. Where no time is fixed for the beginning of the term the person elected is entitled to the office from the date of the election. He is certainly entitled to it as soon as the election has been held, the votes canvassed and the result proclaimed as provided by the Election law. That may, in the case of a circuit judge, be the day after the election. As said in *Mayfield* v. *Moore,* 53 Ill. 428, on page 432 of the opinion: "Under the law, so soon as a majority of the votes were cast for appellant at the elec-

tion held in pursuance to law he became legally and fully entitled to the office. The title was as complete then as it ever was, and no subsequent act lent the least force to the right to the place. The commission was evidence of the title but not the title. The title was conferred by the people and the evidence of the right by the law." It is true that a person elected to the office of circuit judge might not be entitled to perform the duties of that office and receive the emoluments thereof until he had qualified, but such voluntary act on his part would not affect the actual term of the office as fixed or provided by law. While events might happen which would prevent the judge elected from qualifying and assuming the duties of the office for a time, it is certainly not the intendment of the law that such matters can be left to the arbitrary will of the one elected or to the delay or blunders of a canvassing board. In *Attorney General* v. *Love,* 10 Vroom, 476, cited with approval in *People* v. *Reinberg, supra,* it is said: "No date being expressly fixed for the commencement of the new term it must be governed by some general principle applicable to it. It is apparent that if his term did not begin to run until he was qualified, he could, in the absence of any restraining legislation, have prolonged his prior term indefinitely by his own neglect to qualify. Public policy would forbid the adoption of a rule under which such a result is possible." While the office under consideration in that case was appointive, the same thing would be true of an elective office where the one elected is required to qualify. This seems further plain from the provisions of section 125 of the Election law, which provides that every elective office shall become vacant on the happening of certain events before the expiration of the term of such office, such as the death of the incumbent, his resignation, his becoming insane, his ceasing to be an inhabitant of the State or of the district, county, town or precinct for which he was elected, and, among others, "his refusal or neglect to take his oath

of office, or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed by law." An office. could not become vacant during a term unless it had been filled and the term of the occupant had commenced to run. According to the language of this section it must be assumed that the terms of office of the relators commenced with the election, that they were entitled to their offices by virtue of the election and receiving a majority of votes therefor, and that had they refused or neglected to take or file the oath of office within a reasonable time the offices would become vacant and could be filled as provided by law. As has been seen, the county board of canvassers must canvass the votes within seven days after the election, and in case of State officers the .State canvassing board within twenty days. The judicial election is held on the first Monday in June, which can never be later than the seventh day of the month, and the returns should be canvassed, the result proclaimed and the commissions issued, in any event, not later than the 27th.

The case of *People* v. *Callaghan,* 83 Ill. 128, is relied on by counsel for the relators as holding that a term of office begins when the incumbent qualifies. In that case it was held by this court that a town collector's term of office begins when he takes the oath of office, within ten days after his election or appointment. If he fails to take this oath it is deemed a refusal to serve and the vacancy may be filled by appointment. There is a distinction between the cases which define the beginning and duration of a term of office as fixed by law or relating to the office itself, and cases which define the term of the incumbent of an office or the time such incumbent is in office. As applied to the holder of the office, his term, by which is meant his time of holding the office, of course can never be said to begin until he has qualified by filing his oath where an oath is required, or his oath and bond where both are required, and he would not be entitled to draw his salary or

perform the duties of the office until he qualified. But that has nothing to do with the term of office as it is fixed by law. The holding in the *Callaghan case* was based on the statute providing for the election and qualification of town collectors, which statute, in effect, gave to one elected to that office a period of ten days following his election in which to file his oath of office. If he did not so qualify within said ten days the statute further expressly provided that such failure to qualify should be deemed a refusal to serve, and under other provisions of the statute the vacancy could be filled by appointment. It is said on page 134 of the opinion in that case: "It is provided by statute every person elected or appointed to any town office shall, before he enters upon the duties of such office and within ten days thereafter, take and subscribe the oath of office prescribed by the constitution, which shall, within a period fixed, be filed in the office of the town clerk. The neglect of any such officer to take such oath and cause the certificate to be filed shall be deemed a refusal to serve.—Rev. Stat. 1874, secs. 85, 86." That case was an action of *quo warranto,* brought on the relation of one who had been elected town collector at the annual town meeting and who had received a certificate of election and within the time limited by law duly qualified. The defendant to the action claimed to have been appointed to the office by the town officers, who had taken it upon themselves to make the appointment on the ground that the relator had not been legally elected. The lower court denied leave to file the information. This court held that the act of the relator in filing his oath was such an acceptance and user of the office as gave him the right to maintain the action. In the case of town collectors the statute construed clearly contemplates that a person elected might not serve, and as such an officer was necessary to collect the taxes, a definite period of ten days was provided in which the person elected could either accept the office by filing his oath, or by failing so to do should be

deemed to have refused to serve. Moreover, the question raised in that case depended on whether the relator at whose instance the suit was brought had by his own act brought himself within the law so that he was entitled to maintain the action. On the issues before the court in that case the court properly held that the term of the relator, as fixing the time when he had the right to hold the office and to maintain a suit against a usurper of that office, began when he qualified by filing his oath of office. It is manifest that what was said in the opinion in that case has no application to the question at issue in the case at bar.

In *Crook* v. *People,* 106 Ill. 237, the city of Springfield, prior to April 4, 1882, was a municipal corporation organized and existing under a special charter. On that date there was an election held for city officers under such special charter at which a mayor and other officers were elected, and at the same election the legal voters of the city voted to organize under the general Incorporation act of 1872. That act provides that on the adoption of such act an election shall be called for the election of officers thereunder. Section 3 of article 1 of the act provides that the city officers then in office shall thereafter exercise the power conferred upon like officers in the act until their successors shall be elected and qualified. It was held that the officers referred to in that section were the city officers elected at the preceding annual election, and not those who may have received the greatest number of votes at the same election at which the general Incorporation act was adopted, and that those elected at the same time it was voted to incorporate under the general law could not be considered officers for two reasons: First, because they never qualified as such; and second, because they never could qualify because the charter under which they had been elected was repealed, and consequently they could not be considered city officers in office.

The question involved in both of the cases above cited was whether a person claiming to be an officeholder had shown that he was such, and both of the cases merely hold, in effect, that an officer elect becomes an officer *de jure* only after he qualifies, when such qualification is necessary, and that as regards his claim to be an officer and his right to exercise the powers and duties of the office, his term of office, or the time he is considered to be in office, dates from his qualification and acceptance thereof, or, in other words, from the time he does what the law requires him to do. They do not define the term of office as fixed by law. In the case of *Brodie* v. *Campbell,* 17 Cal. 11, it was held that the term of an officer begins with his qualification, but in a special concurring opinion by a majority of that court it was held such qualification must take place within a reasonable time, and in that particular case the act of qualifying had not been unreasonably deferred.

Section 125 of the Election law, *supra,* applies to circuit judges as well as other officers, and provides that if one elected as such officer refuses or neglects to file his oath, the office shall be declared vacant and may be filled in the manner otherwise provided by law. It is difficult to see how an office could be declared vacant unless the term had commenced to run with no one to fill such office, and the only date on which the term could commence must necessarily date back to the day of election, where no other date for the beginning of the term is specifically provided.

It is the contention of counsel for the relators that "the rule is that as soon as a circuit judge is authorized to legally assume the duties of an office by his own action, then, and not before, his term has begun." As has been said, this is true as to the time the incumbent is entitled to his salary and other emoluments and to perform the duties of the office, but to this doctrine as fixing the term of an office, as that term is understood in law, we are unable to agree and it is manifestly wrong. If it is correct, then a

circuit judge, or, in fact, any officer, could indefinitely post-
pone or change his legal term of office by arbitrarily de-
laying to qualify or to make and file his oath, and by such
means either prolong the term of his predecessor or leave
the office vacant; and this might be done in case of an
office the term of which is otherwise fixed to begin and
end at certain dates. Such a possibility was never contem-
plated by the constitution and the laws, and, as we have
seen, is directly contrary to section 125 of the Election law.
If the contention of counsel for relators is right, then if
one of the circuit judges elected had received from the
county clerk one of the commissions signed by the Gover-
nor on June 24 and had filed his oath before June 30 he
would receive the old salary, but those who qualified after
July 1 would receive the increased salary fixed by the law
that went into effect on that date, and thus all would be
serving the same terms which would expire at the same time
but would be receiving different salaries.

There is another provision of the constitution (sec-
tion 32 of article 6) which provides that vacancies in the
elective office mentioned in the article on judiciary shall
be filled by election, but where the unexpired term does
not exceed one year the vacancy (in the case of judges)
shall be filled by appointment by the Governor. What date
shall be taken as the expiration of the term of office of a
circuit judge in determining whether a vacancy occurs with-
in a year of the expiration of his term, if his term does
not begin until any time he sees fit to qualify?

It is claimed that the only lawful canvass of the votes
and returns forwarded to be canvassed by the State can-
vassing board were the returns and abstracts of votes as
finally forwarded by the county clerk on the first day of
July, the reason being that the returns first sent in did not
contain the abstracts of the canvass of the votes for judge
of the Supreme Court and for various propositions voted
on and all of the votes for some of the candidates for the

office of circuit judge. As to the returns, it is conceded that the later returns that were forwarded to the Secretary of State by the county clerk did not change the result, and it fully appears that so far as either of the relators was concerned, or any of the circuit judges elected, their commissions were actually issued and mailed to the county clerk prior to the first of July although such commissions were not delivered to them or accepted by them. We are aware of no authority resting in the Governor or in the State canvassing board to recall these commissions and cancel them and issue new ones. As held in the recent case of *Donahoe* v. *Owens, 277* Ill. 318, a canvassing board having once canvassed the returns and declared the result of an election has no power or authority to re-convene and ascertain or determine any result other than the one declared by it and shown by the true election returns signed by the judges and clerks of election. As far as either of the relators is concerned, the abstracts of votes mailed to the Secretary of State June 22 were correct and the later abstracts sent made no difference in the result as to them. The only material change in the later abstracts of votes sent was to include the abstract of votes for judge of the Supreme Court. There was nothing improper in the county board meeting and sending in the abstract of votes for judge of the Supreme Court. That action on their part was simply a completion of their duties. Any change they might have made in the abstracts of votes for circuit judges would have been a nullity. (McCrary on Elections, sec. 267; *People* v. *Mottinger, 212* Ill. 530.) As said in *People* v. *Green, 265* Ill. 39, on page 42 of the opinion: "The legality of the election and the rights, powers and duties of the office do not depend upon the fact of the declaration of the board of elections. That declaration is proper and is the usual practice, but withholding it or neglecting causelessly or illegally to make it will not prevent the installation in and investment with the office. The authority, rights

and powers of such officers are derived from the election and not from the returns, which are the usual prescribed evidences of it.' (*People* v. *Kilduff*, 15 Ill. 492.) In reaching the correct results in proper proceedings in election matters very little attention is paid to mere irregularities in the acts of election officers which do not affect the real merits of the case." If the commission was anything more than mere evidence of the office then the office was filled when the commission was first issued, June 24, 1915, but we think that in law the term of the office had commenced running whether the person entitled to the commission ever accepted it or not. If he did not accept it and qualify by filing his oath, then, under the law, the office could be declared vacant and filled by another election, and, as above stated, a vacancy could not be declared unless there had been a term of office without an incumbent.

For the reasons given the writ is denied in each case.

*Writ denied.*

Mr. CHIEF JUSTICE CARTER filed the following separate opinion:

I do not concur in all the reasoning of the foregoing opinion. To hold, as does that opinion, that the term of office begins with the day of election, in my judgment nullifies, in practical effect, the constitutional provision which states that "all officers provided for in this article shall hold their offices until their successors shall be qualified." (Const. art. 6, sec. 32.) The statute in question provides that the salaries of the judges shall be paid to those "hereafter to be elected or who have been elected but whose terms of office have not yet commenced." It is clear, therefore, that, so far as the legislature was concerned, they intended to have the salaries apply, not from the day of election but from the date of the beginning of the term of office, and that they intended the law to apply to those judges who then were elected but whose terms of office had not begun. As a matter of fact, a superior court judge was elected at

the same time as the circuit judges whose salaries are here under consideration, and the term of office of this superior court judge, by statute, did not begin until the December following his election. This opinion holds, in effect, that the act is unconstitutional as to this superior court judge whose term of office did not begin until six months after the election,—that is, the opinion holds that the act is only constitutional as to those judges who were elected after the act went into effect. I agree that any reason that would · justify forbidding a change in the salary of a judge after his term began would logically apply to an increase in such salary after a judge was elected. But the constitution does not provide for, and I do not think the members of the constitutional convention had in mind, a situation such as is presented by this superior court judge, whose term of office clearly began long after his election.

The constitutional provisions with reference to the change of salaries of the judges refer only to their terms of office and not to the date of their election. The constitutional provision that applies to salaries of circuit judges outside of Cook county reads: "After their salaries shall be fixed by law, they shall not be increased or diminished during the terms for which said judges shall be, respectively, elected." (Const. art. 6, sec. 16.) The constitution reads as to such judges in Cook county: "Such further compensation, to be paid by the county of Cook, as is or may be provided by law; such compensation shall not be changed during their continuance in office." (Const. art. 6, sec. 25.) This court held in *Foreman* v. *People*, 209 Ill. 567, that these two clauses, with their different wordings, were equivalent in meaning,—that is, that they should be read together, one being explanatory of the other. If the words "during their continuance in office" are construed, as they must be, as equivalent to "during the terms for which such judges shall be, respectively, elected," it seems plain that to give effect to both sections the term of office can only begin when the

occupant can be said to be "in office." In other words, the term must begin when the occupant has been inducted into the office for which he was elected. The reverse must also be true. If "during the continuance in office" means "during the term," then "during the term" must mean "during the continuance in office." I do not think that the constitution can be arbitrarily construed as if it read that "the salary of such judges shall not be increased or diminished after their election." The constitution does not in any way refer on this question, directly or indirectly, to the date of election but to the "term" of office. This is practically conceded by the reasoning and statements of the foregoing opinion, for it is there said that "the exact question raised * * * is, when do the terms of office of circuit judges in the State begin and end?" Under the reasoning of the foregoing opinion it seems to me a man could be said to have begun his term of office without being "in office." All the authorities hold that an official is not in office until he has complied with all constitutional requirements,—that is, he must have been commissioned by the Governor and have taken the oath of office.

I find nothing in the constitution that states that the beginning of the term and the date of election are the same. In *Prowell* v. *State,* 142 Ala. 80, it was said (p. 85) : "Unless some other time is fixed for the beginning of a term of office, the general presumption is that the official term dates from the legal ascertainment of the result of the election, and the officer assumes the duties of the office as soon thereafter as he can qualify and receive his commission." In *People* v. *Reinberg,* 263 Ill. 536, this court said (p. 542) : "When the law does not fix any time for the commencement of a term of office to be filled by appointment the term will begin to run from the date of the appointment." *Crook* v. *People,* 106 Ill. 237, was an action of *quo warranto* by Jayne against Crook to test the right of the latter to the office of mayor of Springfield. This court there said: "A

person elected to a position would not be an officer, in the sense that term is used in the law, until he should thereafter be qualified, as the law directs, by giving bond and taking the oath of office when these acts are required by law." In that case the newly elected officers had not been qualified in conformity with the city ordinance, and it could not then be known that they would so qualify. "First, they might decline to take upon themselves the burden of the offices to which they had been chosen, and therefore decline to qualify; and second, the charter under which they were chosen might be repealed or annulled, as it was, before they could qualify, and certainly they could not thereafter qualify under a charter that had ceased to exist. It is essential a person chosen should qualify before he becomes an officer, in the sense that term is used in the statute." In *People* v. *Callaghan,* 83 Ill. 128, it was said (p. 135) : "When does the collector's term of office begin and when does it end? Manifestly, when he takes the oath of office provided for in the 85th section of the Township Organization act, within ten days after his election or appointment. He is then the collector for the current year. * * * It seems to us the conclusion is irresistible that the collector's term of office commences when he takes the oath within ten days of his election or appointment." In *People* v. *Whitman,* 10 Cal. 38, the court said (p. 43) : "To constitute the 'holding' of an office * * * there must be the concurrence of two wills,—that of the appointing power and that of the person appointed. * * * The person appointed * * * is required to give a bond and take an oath before he can possess the office." In *Haight* v. *Love,* 39 N. J. L. 476, the court said: "In my judgment the true rule is that as soon as the appointee is authorized by his own action to legally assume the duties of his office, then his term should be regarded as begun unless some other period is clearly fixed by the proper authority."

Our constitution provides that the terms of office of the judges elected after its adoption shall be six years, and that the election of the judges for the circuit court shall be held the first Monday in June, 1873, and every six years thereafter. (Const. art. 6, secs. 14, 23.) It also provides that all officers provided for in the article shall hold their offices until "their successors shall be qualified." Under the holding of this opinion, how can the conclusion be escaped that if a judge is not re-elected his term ends at once on the day of the election and not as soon as his successor is elected and qualified, and that the term of his successor begins on the day of election? To say, as does the opinion, that the words are not used in that sense is no answer, or to say that the judge who remains in office until his successor is elected and qualified is holding over does not appear to be a logical answer to the constitutional question here under consideration. It is settled by an unbroken line of authorities, that when a judge holds over after the expiration of his term, under a constitutional provision such as we have, until the qualification of his successor, the period during which he so holds over is not a new term but a part of the old term. Thus, in *Pruitt* v. *Squires,* 68 Pac. Rep. (Kan.) 643, the court said: "It seems to be well settled that the indefinite portion of time indicated by the phrase, 'until their successors shall be qualified,' is as much a part of the term of office as the time during which the officer is entitled absolutely to hold. * * * To be sure, this additional time is conditional and defeasible, but until the condition arises which defeats it, it remains a part of the constitutional term." (See to the same effect, *Kimberlin* v. *State,* 130 Ind. 120; *People* v. *Whitman, supra;* Mechem on Public Officers, sec. 397; *Crook* v. *People, supra; School Trustees* v. *Cowden,* 240 Ill. 39.) In *Badger* v. *United States,* 93 U. S. 599, it was stated: "When it is said in the statute that the resignation may be thus accepted, it is like to the expiration of the term of office. In form the office is

thereby ended, but to make it effectual it must be followed by the qualification of a successor." In *People* v. *Barnett Township,* 100 Ill. 332, it was held that where the tenure of an office is fixed for a specified period of time and "until a successor shall be elected or appointed and qualified," the mere expiration of the specified period of time for the duration of the term of office will not operate to vacate or to impair the powers of the officer to continue in the performance of the duties of the office; nor will the election or appointment, alone, of his successor have any such effect, for there must be superadded to the election or appointment of a successor, his qualification, in order to complete the divestiture of the prior incumbent of his official authority.

Either the foregoing opinion, it seems to me, overrules, in effect, several decisions of this court on this question and the general doctrine as laid down in other authorities, or it must be held that it is possible that two officers may fill the same office during the same period of time. If it is the law that a judge holds until his successor is qualified and that such additional time is a part of his term, then the term of the newly elected circuit judge does not commence until his predecessor's term ends,—that is, until the new judge has been qualified and commissioned. In *State* v. *Gunter,* 170 Ala. 165, the court said (p. 171): "If section 1 [of a certain act] fixes the term of the judges to be elected thereunder on the 15th of November, 1910, it by necessary implication terminates the existing terms as of said date." In *Board* v. *Lee,* 70 Atl. Rep. (N. J.) 925, the court said: "To assert that a term of office of an impeached or deceased officer continues, is to assert that there may be two terms of office running together although the office can be filled but by a single person."

*Mayfield* v. *Moore,* 53 Ill. 428, which has been referred to in the discussion of this question, and *Kreitz* v. *Behrensmeyer,* 149 Ill. 496, were each contests for salaries of

280 – 30

offices by the *de jure* against the *de facto* officers. All that the court in those opinions said, as relied on, referred only to the fact that the title to the office was complete when the votes were cast. No one disputes this proposition, but the title to the office and the beginning of the term are entirely different and distinct questions. Practically the same thing is true as to the reasoning of this court in *People v. Green,* 265 Ill. 39. This last case holds, as do the other cases cited of like nature, that the will of the people cannot be overturned by the neglect of ministerial officers in canvassing or making returns of the votes, and none of these cases had under consideration the question when the term of office begins.

The late Justice Field of the United States Supreme Court said, when on the Supreme bench of California, in *Brodie v. Campbell,* 17 Cal. 11: "Though it is true that the right to an office is derived by election from the people, it is doubtless competent for the legislature to require the enjoyment of such office to rest upon the issuing of a commission or the qualification of the officer. When these conditions are imposed the right to enjoy the office does not begin until the conditions are complied with,—in other words, the right to hold the office is not complete until the conditions are satisfied. Until then the term of office cannot begin to run."

I do not deem it necessary, in view of the reasoning in the foregoing opinion, to discuss the question whether the commissions should have been issued on the first returns as to the election of these judges. I agree with the reasoning of the opinion that a judge cannot, by mere subterfuge, delay qualifying and thus extend the time when his term of office shall begin. The term should be construed to begin as soon as the returns are made by the proper officials, the commission issued and a reasonable time has expired for the qualification of the judge. What is a reasonable time for such acts will depend in some measure upon the special facts of each case.