(No. 52862.—

MARSHALL E. WINOKUR, Appellant, v. EDWARD J. ROSEWELL, County Treasurer, *et al.*, Appellees.— JEROME HUPPERT, Appellant, v. GEORGE W. DUNNE *et al.*, Appellees.—CARL R. HANSEN *et al.*, Appellant, v. GEORGE W. DUNNE, Appellee.

*Opinion filed December 1, 1980.*

Arnold M. Flamm, of Chicago (Prins, Flamm & Susman, Ltd., of counsel), for appellant Winokur.

Thomas J. Royce, of Chicago, for appellant Huppert.

James T. Ryan, Special State's Attorney, of Chicago (Moshe J. Sassover, of Greenberger, Krauss & Jacobs, Chartered, of counsel), for appellants Hansen *et al.*

Jerome H. Torshen, Special State's Attorney, of Chicago (Abigail K. Spreyer, of counsel), for appellees Edward J. Rosewell *et al.*

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Henry A. Hauser, Assistant State's Attorney, of counsel), for appellees Dunne and Beck.

MR. JUSTICE CLARK delivered the opinion of the court:

The incumbent members of the Cook County Board were reelected on November 7, 1978, for new four-year terms scheduled to begin on December 4, 1978. A special meeting of the board was held on November 27, 1978, and the board adopted two resolutions increasing the compensation of various Cook County officers and the members of the board, to take effect on December 4, 1978, the date their new terms began.

President Dunne vetoed these resolutions the next day. The board overrode his veto on November 29, 1978. The final appropriation ordinance for the new fiscal year beginning on December 4, 1978, was adopted on February 20, 1979. This ordinance provided for the raises adopted in the resolutions. On February 26, 1979, President Dunne exercised a partial line item veto which had the effect of reducing, but not eliminating, the raises as provided in the resolutions.

Three separate lawsuits arose from these facts. In Winokur v. Rosewell, the circuit court of Cook County, ruling on a constitutional challenge by plaintiff, Marshall E. Winokur, representing the class of taxpayers, held that the raises were valid. In Huppert v. Dunne, another judge of the same court ruled, in a petition for *mandamus* brought by a member of the board to compel President Dunne and County Board Comptroller Beck to pay the raises authorized, that the board's action violated section 38 of "An Act to revise the law in relation to counties" (the Counties Act) (Ill. Rev. Stat. 1977, ch. 34, par. 304). The petition for *mandamus* was accordingly dismissed. The third suit, Hansen v. Dunne, a petition for *mandamus* and declaratory judgment, prayed for a judgment declaring President Dunne's partial line item vetoes null and void and for a writ of *mandamus* directing President Dunne to approve payment of the raises as authorized in the resolutions. The third suit also involved the board's adoption of an ordinance, on February 5, 1979, to reduce the percentage of votes necessary to override a veto by the president of the board. President Dunne vetoed this measure on February 13, 1979, and the members argue that his action was untimely and, in the alternative, that the prior percentage necessary to override the veto, 80%, is unconstitutional. The appropriate relief was requested. In this suit a third judge of the circuit court of Cook County ruled that the pay raises were invalid on statutory and

constitutional grounds and that President Dunne's line item vetoes were valid. The court also upheld the veto of the ordinance reducing the percentage of votes needed to override a veto and upheld the constitutionality of the higher percentage figure. We granted a direct appeal to this court (see 73 Ill. 2d R. 302(b)) and consolidated these cases.

The first issue, whether the Board's action can stand in view of section 38 of the Counties Act is easily resolved. Section 38 states:

"The time of fixing the compensation of county officers, which compensation is to be fixed by the county board, shall be at the meeting of such Board next before the regular election of the officers whose compensation is to be fixed; but in case where such compensation is not fixed, the Board shall proceed, at the next regular or special meeting thereafter, to fix such compensation." (Ill. Rev. Stat. 1977, ch. 34, par. 304.)

Section 61.2 of the Counties Act (Ill. Rev. Stat. 1977, ch. 34, par. 906) states that "regular" meetings "shall" be held "on the first Monday of December, January, February, March, June, and September in each year *** ." Rule 3 of the Cook County Board, "adopted *** pursuant to the authority granted to the County of Cook as a home rule unit," states that "[t]he Board of Commissioners shall hold regular meetings on the first and third Monday of each month."

After the general election, held on November 7, 1978, the board met on November 20 (the third Monday in November), November 27 and November 29. The new term began on December 4. The compensation resolutions were adopted at the meeting of November 27. Defendants Dunne and Beck contend that in view of section 61.2, the November 20 meeting was a special meeting for purposes of section 38. In the alternative, they contend that if salary action is not taken before an election, section 38 allows such action only at the first meeting after the

election. If we accepted either argument, the board's action was illegal. Applying the first analysis suggested, the board's action was illegal because the November 20 meeting, at which no salary action was taken, was the first special meeting held after the election, and section 38 does not allow salary action to be taken after the first special meeting subsequent to the election. Under the second suggested analysis, the board's action was illegal because even if the November 20 meeting were to be considered a regular meeting, no action was taken at this meeting. As the defendants argue in their brief:

> "The statutory language [section 38] clearly permits only two opportunities to consider a pay raise, once immediately before the election, once immediately after. The use of the word 'next' in the statute, together with the singular 'meeting' clearly supports this conclusion. Moreover, the use of the alternate 'regular or special' results from the eventuality that only a special meeting might be possible under the statutory provisions and rules of the Board relating to meetings."

Plaintiffs in the Hansen and Huppert cases argue that the board's Rule 3, as an exercise of the home rule power, overrides section 61.2 and that section 38 allows salary action to be taken at either of two times after an election: either at the first regular meeting after the election or at the first special meeting after the election. Under this analysis, the failure of the board to take action at the meeting of November 20 did not prevent its action at the meeting of November 27.

We decline to resolve this statutory ambiguity at this time, for in *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, 393, we held that "acts taken by the governing board of a home rule unit" were to be deemed as an exercise of its home rule power provided under article VII, section 6, of the 1970 Constitution. The salary resolutions here obviously pertain to its government and affairs. (Ill. Const. 1970, art. VII, sec. 6(a); see generally Sanda-

low, *The Limits of Municipal Power Under Home Rule: A Role for the Courts,* 48 Minn. L. Rev. 643 (1964).) Insofar as these resolutions conflict with section 38, enacted well before the 1970 Constitution, they must prevail. (See *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, 392-93, and cases cited therein.) No case has been cited by the parties or found by us which would support upholding section 38, as defendants Dunne and Beck have urged, as a merely procedural limitation upon home rule units requiring them to explicitly state their opposition to it before enacting a replacement procedure.

We must turn, then, to the contention of plaintiff Winokur and defendants Dunne and Beck that the raises violated article VII, section 9(b), of the Illinois Constitution which reads:

> "An increase or decrease in the salary of an elected officer of any unit of local government shall not take effect during the term for which that officer is elected." (Ill. Const. 1970, art. VII, sec. 9(b).)

This section replaced similar provisions of the Constitution of 1870. See, *e.g.,* Ill. Const. 1870, art. IX, sec. 11; art. X, sec. 10.

The 1870 provisions have been the subject of much litigation, primarily concerning which officials were within its scope. (See *e.g., Barnett v. County of Cook* (1926), 320 Ill. 227; *Peabody v. Forest Preserve District* (1926), 320 Ill. 454; *People ex rel. Lyle v. City of Chicago* (1935), 360 Ill. 25; *People ex rel. Ruesch v. Hire* (1950), 406 Ill. 341.) These provisions generally were understood to make the public officers' term of office the dispositive event which prevented further salary adjustments.

Thus, in *County of Cook v. Sennott* (1891), 136 Ill. 314, it was held that an elected clerk of the probate court taking office in December 1886 for a four-year term could not have his salary increased by legislation taking effect in July 1887. In *Peabody v. Forest Preserve District*

(1926), 320 Ill. 454, it was held that the fees, salary or compensation of a municipal officer "elected or appointed for a definite term of office" shall not be "increased or diminished during such term." (320 Ill. 454, 463.) In *People ex rel. Lyle v. City of Chicago* (1935), 360 Ill. 25, 29, it was similarly held that a city council was without authority to change municipal judges' salaries "during the respective terms for which they were elected." (360 Ill. 25, 29.) And in *Foreman v. People ex rel. McEwan* (1904), 209 Ill. 567, a judge elected in 1899 for a six-year term at a salary of $7,000 resigned before his term ended; a special election was held to fill this vacancy after an act to raise the judicial salaries took effect. The court held that the prohibition referred to terms of office and not to when an individual judge was elected. See also *Purcell v. Parks* (1876), 82 Ill. 346; *Wolf v. Hope* (1904), 210 Ill. 50; *People ex rel. Judge v. Board of Commissioners* (1913), 260 Ill. 345; *Barnett v. Cook County* (1926), 320 Ill. 227; *Peabody v. Russel* (1922), 301 Ill. 439; *Brissenden v. Howlett* (1964), 30 Ill. 2d 247.

Plaintiff Winokur and defendants Dunne and Beck primarily rely upon the rationale expressed in *People ex rel. Holdom v. Sweitzer* (1917), 280 Ill. 436, a case we find inapposite. There a pay raise voted by the General Assembly after the election of certain judges was held inapplicable for the term for which they had been elected. The issue was complicated by the absence of any statutory or constitutional provision stating when the judges' terms began. The court resolved this complication by holding that the judges' terms began on the date of their election, and the appellate court, in two cases similar to the one at bar here, has held *Sweitzer's* reasoning inapplicable on that basis. See *Smith v. County of Bureau* (1926), 241 Ill. App. 117; *Winokur v. Bakalis* (1980), 84 Ill. App. 3d 922, *appeal denied* (1980), 81 Ill. 2d 600.

*Sweitzer* involved two constitutional provisions of

article VI, sections 16 and 25, of the 1870 Illinois Constitution which were enacted to preserve the independence of the judiciary by insulating it from legislative salary adjustments. (280 Ill. 436, 442; 1870 Proceedings 1015-20; 1058-60.) The court, early in the opinion, explained its reasoning:

> "The constitution expressly prohibits the legislature from increasing the salaries of circuit judges, and, in fact, of all State officers, during the terms for which they were elected. The theory of the framers of the constitution was to make the three branches of government, the legislative, executive and judicial, separate and independent of each other, as far as possible. The power to fix the salaries of State officers is in the legislative branch of the government, the duty to enforce acts of the legislature is in the executive branch, and the power to construe the acts of the legislature is in the judiciary. The acts of the officers of each branch, while such officers are in power, should not be made to depend upon or be influenced by the acts of another branch, nor should there be anything in the conduct of either that would even give rise to a suspicion of such a thing as coercion by reducing salaries or a reciprocal interchange of favors by increasing salaries, hence the reason for the constitutional provision putting it beyond the power of the legislature to increase or diminish the salaries of State officers in office and in power." 280 Ill. 436, 442.

Authors Braden and Cohn point out in their study of the 1870 Constitution, prepared for the delegates to the 1970 constitutional convention, that "in the welter of litigation the principles [involved in the salary-limitation provisions of the 1870 Constitution] sometimes seem to be forgotten." (G. Braden & R. Cohn, The Illinois Consti-

tution: An Annotated and Comparative Analysis 476
(1969).) These authors differentiate the separation of
powers principle justifying a salary limitation from a
second principle also justifying such a limitation: "that a
man ought not to be able to increase his own salary."
(G. Braden & R. Cohn, The Illinois Constitution: An
Annotated and Comparative Analysis 477-78 (1969).)
Utilizing Braden and Cohn's analysis, we find, from the
excerpt of *Sweitzer* quoted previously here, that the
rationale of *Sweitzer* is grounded upon the separation of
powers principle.

It is true that the *Sweitzer* court stated "that there is
just as much reason for a constitutional provision pro-
hibiting an increase in the salaries of officers who have
been elected to office and who are sure of holding office
but whose terms have not yet commenced, as there is
prohibiting an increase in salaries of those actually in
office." (280 Ill. 436, 442-43.) This issue, however, was
not briefed by the parties in *Sweitzer* and conflicts with
this court's holding in *Foreman v. People ex rel. McEwan*
(1904), 209 Ill. 567. Nor does this statement, as applied to
officials who necessarily have to vote on their own salaries,
because no other branch of government could do so,
logically follow from the separation of powers rationale by
which it was immediately preceded. Finally, whether State
or local officials who necessarily have to set their own level
of compensation could set it during a term for which they
had been elected, but which would only take effect during
a subsequent term for which they also had been elected
was an issue not before the *Sweitzer* court.

Turning to this issue, we note that four years after the
1870 convention, the General Assembly passed the pre-
viously discussed section 38 (Ill. Rev. Stat 1874, ch. 34,
par. 38). This section, which was not brought to the atten-
tion of the court in *Sweitzer*, is probative of the intent of
the 1870 framers as a contemporaneous and long standing

construction of the Constitution (see *Furlong v. South Park Commissioners* (1930), 340 Ill. 363, 369; 2A A. Sutherland, Statutes and Statutory Construction secs. 49.03, 49.04 (4th ed. 1973).) This statute, as noted, provided that county boards could set their own compensation for a new term either before or after the election preceding that term. It is significant, we think, that in the more than 60 years after the *Sweitzer* decision, section 38 has never been challenged.

In addition, according to salary resolutions submitted on the record in the Winokur case, since 1962 the county board has set its salary at a meeting held after the election for a new term but before it began. Each time several members of the board had been reelected and were, therefore, voting to increase their own salaries.

This custom was apparently found unobjectionable by the delegates to the 1970 constitutional convention. They enacted a provision similar to those types of limitations contained in the 1870 Constitution. It indicated no dissatisfaction with section 38 or with the custom of the Cook County Board, a custom that continued after the adoption of the 1970 Constitution.

Plaintiff Winokur argues that section 9(b) of article VIII of the 1970 Illinois Constitution is similar to the parallel provision in the legislative article (Ill. Const. 1970, art. IV, sec. 11) and that the convention debates concerning that section support his position. Quoting from delegate Laurino, he argues that the constitutional provision protects against legislators running "wild with their own salaries, because it needs an intervening election before it becomes effective." (4 Record of Proceedings, Sixth Illinois Constitutional Convention 2705 (hereinafter cited as Proceedings.) The remarks of other delegates, however, indicate the difficulty of adopting this construction of section 9(b) on this basis. See, *e.g.*, 4 Proceedings 2889 (remarks of delegate Netsch: "[delegates

supporting the provision] want the legislators to be put in a position where they cannot vote themselves a salary increase that would be effective immediately but could take effect only at the conclusion of their term"; remarks of delegate Parkhurst: "Presently section 10 says no changes shall become effective during the term"; 4 Proceedings 2890 (remarks of delegate Elward: "At the present time—and as I read this language, it will be so in the future—members of the Senate would have to wait [for a salary increase] until the end of their term.") See also *Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 221; *People ex rel. Cosentino v. County of Adams* (1980), 82 Ill. 2d 565.

We cannot conclude from this record that the candidates for reelection to the Cook County Board misled the public during the campaigns they waged for office, thereby receiving a false mandate. Nor can we conclude from the facts submitted that the county board's action evidences anything but an effort to set an appropriate level of compensation.

The practice of the Cook County Board in setting salaries after the election for a new term but before it began has been well-established and, up to now, complaint free. The potential for abuse, such as it is, identified by those who challenge these resolutions, has always existed. Experience with these raises or some future raises may suggest to the electorate or their representatives that further controls upon the discretion of the county boards in setting their salaries are necessary or desirable. Until that time, and in the absence of any evidence indicating something other than an effort to set an appropriate level of compensation, we hold that section 9(b) of article VII of the 1970 Constitution does not prohibit the actions taken here by the Cook County Board.

We also agree with the commissioners that President Dunne's line item vetoes are void. The parties agree that

the Cook County Board president's veto authority is found in section 61.4 of the Counties Act, which states:

"Such veto by the president may extend to any one or more items or appropriations contained in any resolution making an appropriation, or to the entire resolution; and in case the veto only extends to a part of such resolution making an appropriation, the residue thereof not embraced within the veto shall take effect ***." (Ill. Rev. Stat. 1977, ch. 34, par. 908.)

From the quoted section of the statute, it can be seen that the extent of the veto power, set out in the first clause, encompasses resolution items or appropriations or may extend to the entire resolution. The second clause explains the consequences of a veto of less than the entire resolution.

Language similar to section 61.4 established the veto power of the Governor of Illinois in the 1870 Constitution:

"Bills making appropriations of money out of the treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections, and if the Governor shall not approve any one or more of the items or sections contained in any bill, but shall approve the residue thereof, it shall become a law as to the residue in like manner as if he had signed it." (Ill. Const. 1870, art. V, sec. 16.)

This constitutional provision was construed by this court to disallow partial line item vetoes in *Fergus v. Russel* (1915), 270 Ill. 304, 350-52:

"The Governor is authorized to express his disapproval of any item or section contained in any appropriation bill only in the manner provided by the constitution. He must either approve or disapprove of the item as a whole. ***

***

*** The action of the Governor in attempting to veto portions of the various items indicated in

the veto message was void and without any effect whatever."

And historically, a veto authority has not been understood to encompass the power to exercise a partial line item veto, nor is there evidence in the record that any county board president has ever before even attempted to exercise such power. Thus the delegates to the 1970 constitutional convention found it necessary to completely alter the gubernatorial veto provision in order to provide such power. (See Ill. Const. 1970, art. IV, sec. 9(d).) This section now reads:

"(d) The Governor may reduce or veto any item of appropriations in a bill presented to him. Portions of a bill not reduced or vetoed shall become law. An item vetoed shall be returned to the house in which it originated and may become law in the same manner as a vetoed bill. An item reduced in amount shall be returned to the house in which it originated and may be restored to its original amount in the same manner as a vetoed bill except that the required record vote shall be a majority of the members elected to each house. If a reduced item is not so restored, it shall become law in the reduced amount."

No comparable change has been made in section 61.4.

The plaintiffs in Hansen v. Dunne filed two additional complaint counts for declaratory judgment (Ill. Rev. Stat. 1977, ch. 110, par. 57.1) relating to an ordinance passed which would reduce the percentage of votes needed to override a veto by the president of the board. Although an actual controversy has been alleged because it is contended that President Dunne's veto of that ordinance was invalid, while President Dunne claims that it was valid, it has not been shown what "personal claim, status, or right" would be affected by this controversy. (See *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 450-51; *Griffin v. County of Cook* (1938), 369 Ill. 380, 398.) Therefore we hold that

this is not an appropriate case in which to decide this controversy. A different case would be presented if the validity of some ordinance in which these plaintiffs had an interest depended upon the percentage of votes necessary to override a veto.

For the foregoing reasons, the order of the circuit court of Cook County in Winokur v. Rosewell is affirmed and the cause remanded for entry of an appropriate order; orders of the circuit court of Cook County in Huppert v. Dunne and Hansen v. Dunne are reversed and the cause remanded with directions to grant the relief requested in accordance with this opinion.

*Affirmed and remanded in*
*Winokur v. Rosewell;*
*reversed and remanded in*
*Huppert v. Dunne and*
*Hansen v. Dunne.*