PAULETTE REED, Plaintiff and Counterdefendant-Appellee, v. GEORGIA BURNS, Defendant and Counterplaintiff-Appellant.

First District (6th Division)   No. 1—91—2825

Opinion filed October 23, 1992.

Richard Klawiter and William P. Wilen, both of Legal Assistance Foundation, of Chicago, for appellant.

Ellis J. May III, of Ellis J. May & Associates, of Chicago, for appellee.

PER CURIAM: Following a bench trial, the trial court entered judgment for plaintiff and against defendant in defendant's claim for damages in a landlord-tenant dispute. (Ill. Rev. Stat. 1989, ch. 110, par. 9—207.) On appeal defendant contends that the trial court erred as a matter of law in concluding that State law supersedes a Chicago municipal ordinance in an action for retaliatory eviction.

On November 5, 1990, plaintiff filed her complaint against defendant for possession of an apartment in Chicago, because defendant had "held over" after her tenancy expired. Defendant counterclaimed, alleging that under the applicable municipal ordinance she had exer-

cised her right to withhold part of her rent because of defects in the premises which plaintiff as her landlord had refused to remedy. Defendant also alleged that she had received a 30-day notice to terminate the tenancy which was dated September 29, 1990, and that this date was 10 days after defendant had sent her third letter to plaintiff complaining of noncompliance with the Chicago municipal housing code. Defendant filed her motion for summary judgment. In it defendant contended that she was entitled to judgment because:

> "[w]hen a landlord serves a tenant with a 30-day Notice to Terminate Tenancy and then proceeds to accept rent subsequent to the date on which the tenancy is to expire, the landlord has waived the legal effect of the notice."

The trial court dismissed plaintiff's forcible entry and detainer claim by agreed order and set defendant's counterclaim for retaliatory eviction for trial.

At trial, defendant testified that she was current in her rent and had never been delinquent in that regard. Defendant further testified that after moving to plaintiff's apartment in June 1989, she had experienced problems with the plumbing, lighting fixtures, and rodents. Defendant then telephoned plaintiff, and after receiving no response, she wrote her a letter on July 17, 1989, about the problem. According to defendant, the plumbing problems were subsequently corrected, but in December 1989 she telephoned plaintiff about lighting problems and wrote a letter to this effect. Also according to defendant, the lighting problem was not resolved until July 1990.

In addition, defendant testified that she first noticed a rodent problem in January 1990, and that she subsequently telephoned plaintiff about this problem two or three times per month. According to defendant, this problem has never been resolved, although she had written a letter to plaintiff on this matter dated September 19, 1990.

Copies of all three letters were admitted into evidence. According to defendant, after this last letter plaintiff served her with the 30-day notice which was also admitted into evidence. Defendant also testified that she telephoned plaintiff on numerous occasions to mow the lawn or shovel the snow on the premises.

On cross-examination defendant said at the time plaintiff acquired ownership of the property, her children were three and five years of age, but were not tall enough to touch the string which controlled the kitchen ceiling light. Defendant also testified that she properly disposed of her garbage in plastic bags and placed them in the backyard for later disposal in an appropriate manner. Defendant also said that she had been under a written lease with the previous landlord.

Defendant further testified that plaintiff was aware that defendant had called the "No Heat Hotline" in January 1990, and that plaintiff had never repaired defendant's thermostat.

Plaintiff testified that she became defendant's landlord in 1989. According to plaintiff, she had sent an electrician to repair the lighting fixture in defendant's apartment, and she also replaced the entire fixture in April 1990. Plaintiff said that she had distributed exterminating spray for roaches to the tenants and asked them to "pass the spray thing from apartment to apartment to exterminate." Plaintiff said that she visited defendant's apartment several times and noticed "garbage left uncovered, clothes on the floor, and stacks of toys," and food items left out in the kitchen. According to plaintiff, defendant was on a month-to-month lease and except for defendant, she had never evicted a tenant for any reason other than nonpayment of rent. She also said that she never received any written notice from a tenant other than defendant about withholding rent because of problems with his or her apartment.

Defendant again testified and denied that she ever left her garbage uncovered but stated that she left food out because "I can't put it in the cabinets because the rats eat it." Defendant again testified that she still had problems with rodents in her apartment.

The trial court then stated in relevant part:

"I think it's quite clear from the testimony that was received that what we have is a month-to-month tenancy. That being so I think this is dispositive in terms of whether or not the retaliatory eviction has occurred in this situation.

*** [T]here is no doubt that everything that was requested was complied with.

* * *

*** [W]here there is *** a month-to-month tenancy, I think the State law preempts the City of Chicago ordinance and a landlord does have the right to terminate a tenancy for no cause ***."

The trial court then entered judgment for plaintiff and against defendant. At the hearing on the motion for reconsideration, the trial court stated in relevant part:

"State law gives a landlord a right to terminate a month-to-month tenancy *** with a 30 day notice for no reason. I don't see anything in the landlord-tenant ordinance that refutes that.

* * *

Based on that, I think state law still supersedes when it says you need no reason for wanting your apartment back. If there

is no lease, the only requirement you have is to give them a 30-day notice."

The trial court then denied defendant's motion for reconsideration.

■ On appeal defendant first contends that the trial court erred in concluding that State law supersedes the Chicago landlord tenant ordinance when a tenant resides in an apartment under an oral month-to-month lease. The Illinois Supreme Court has repeatedly held that an ordinance which is within a municipality's home-rule powers supersedes, within the home-rule unit's territory, a conflicting statute passed before the 1970 Constitution took effect. (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166, 290 N.E.2d 240; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 565-66, 301 N.E.2d 281; *Winokur v. Rosewell* (1980), 83 Ill. 2d 92, 97, 414 N.E.2d 724.) The City of Chicago is a home-rule unit. See Ill. Const. 1970, art. VII, §6(a).

■ In the case at bar, section 5—12—150 of the Residential Landlord and Tenant Ordinance (Chicago Municipal Code §5—12—150 (1991)) (ordinance) reads in relevant part:

"It is declared to be against public policy of the City of Chicago for a landlord to take retaliatory action against a tenant, except for violation of a rental agreement or a violation of a law or ordinance. A landlord may not knowingly terminate a tenancy *** because the tenant has in good faith:

\* \* \*

(b) Complained of a *** housing *** or similar code violation or an illegal landlord practice to a community organization or the news media; or

\*\*\*

(d) Requested the landlord to make repairs to the premises as required ***.

\* \* \*

(g) Exercised any right or remedy provided by law. If the landlord acts in violation of this section, the tenant has a defense in any retaliatory action against him for possession ***. *** In an action by or against the tenant, if there is evidence of tenant conduct protected herein within one year prior to the alleged act of retaliation, that evidence shall create a rebuttable presumption that the landlord's conduct was retaliatory."

This section was passed on July 8, 1986, and became effective on October 15, 1986.

■ Section 9—207 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 9—207) reads in relevant part:

"In all cases of tenancy for any term less than one year, other than tenancy from week to week, where the tenant holds over without special agreement, the landlord may terminate the tenancy by 30 days' notice, in writing, and may maintain an action for forcible entry and detainer ***."

This section was effective prior to the relevant effective date of July 1, 1971, of the home-rule provisions in the 1970 Constitution. (See Ill. Rev. Stat. 1971, ch. 80, par. 6.) Because the municipality of Chicago is a home-rule unit (see Ill. Const. 1970, art. 7, §6(a)) and the ordinance addresses the well-being of its citizens, we conclude that the ordinance supersedes the statute in this instance. See *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 113, 421 N.E.2d 196 (landlord-tenant relationship is a proper exercise of home-rule authority).

Plaintiff has also contended that because the ordinance does not explicitly state that month-to-month tenancies are within its scope, then it should be construed consistently with the State law which provides that month-to-month tenancies can be terminated without cause. However, chapter 5—12 of the Code specifically lists rental agreements which are excluded from the ordinance's coverage, and month-to-month tenancies *per se* are not among these exclusions. (Chicago Municipal Code §5—12—020 (1991).) For this reason we conclude that month-to-month tenancies are within the scope of this ordinance.

■ Having concluded that the ordinance governs, we next address whether defendant has proven her cause of action in retaliatory eviction in the case at bar. Under the ordinance there is a rebuttable presumption that an eviction was retaliatory if this event occurred within one year of what could be construed as the tenant's protected acts. Also under the ordinance, a landlord must comply with all the applicable provisions of the municipal code and promptly make all repairs to a premises to ensure compliance. (Chicago Municipal Code §5—12—070 (1991).) If the landlord fails to supply heat, exterminate rodents, and provide adequate light, then there is material noncompliance with section 5—12—070 (Chicago Municipal Code §5—12—110 (1991)). Under these circumstances, the tenant may recover damages (Chicago Municipal Code §5—12—110(e) (1991)), and deduct an appropriate amount, reflecting the reduced value of the premises, from each rental payment. Chicago Municipal Code §5—12—110(d) (1991).

■ In the case at bar defendant complained about the heat, lighting, and rodents within one year of receiving her September 29, 1990, 30-day notice from plaintiff. Plaintiff has not rebutted the ordinance's presumption of retaliatory eviction by establishing a history of defendant's chronic rent default, nuisance or other problems created by her

possession of the premises. Plaintiff also admitted that prior to serving defendant with an eviction notice she had never served such a notice unless a tenant had defaulted in rental payment. Contrary to the trial court's finding of fact, the record establishes that defendant's rodent problem was never solved, nor was the heating problem resolved until defendant called for city intervention. We therefore conclude that the eviction was retaliatory in motive and that the trial court's decision was against the manifest weight of the evidence and incorrect as a matter of law.

For the above reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for entry of judgment in defendant's favor for costs and damages as provided by the ordinance.

Reversed and remanded.

EGAN, P.J., and McNAMARA and RAKOWSKI, JJ., concur.