Fourth Division

December 18, 1997

1-96-3870

AMERICAN NATIONAL BANK as Trustee under ) APPEAL FROM THE 

Trust No. 28399 by METROPLEX, INC., as ) CIRCUIT COURT

agent, ) OF COOK COUNTY.

)

Plaintiff-Counterdefendant-Appellee, )

)

v. )

)

JOHN POWELL, ) HONORABLE

) D. ADOLPHUS RIVERS,

Defendant-Counterplaintiff-Appellant. ) JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

John Powell, a tenant in a south-side high-rise for nearly 25 years, challenged his landlord, Metroplex, Inc. (Metroplex) to make substantial repairs by withholding rent under the Chicago Residential Landlord and Tenant Ordinance (RLTO).  Metroplex filed a forcible entry and detainer claim against Powell, seeking to evict him for not paying the required rent.  Metroplex alleged Powell failed to abide by the ordinance's requirements for withholding rent.

We agree Powell did not bring himself within the terms of the RLTO.  The remaining question is whether Powell's failure to abide by the RLTO is fatal to his retaliatory eviction affirmative defense.  Because we answer this question in the negative, we reverse and remand.

FACTS

In 1973, Powell became a tenant at 4700 South Lake Park Avenue in Chicago.  Powell renewed his lease periodically, and on June 19, 1995, he signed the lease with Metroplex.  The lease began on July 1, 1995 and provided for monthly rent of $668, payable on the first of each month at Metroplex's office in downtown Chicago.  If Powell did not pay the full amount of his rent by the fifth of each month, Metroplex could assess a late-rent charge and eventually terminate Powell's lease for "nonpayment of rent beyond any grace period available under State law" or repeated late payment of rent.  

Powell's lease was governed by the RLTO.  The RLTO provides:

"If there is material noncompliance by the landlord with a rental agreement *** the tenant may notify the landlord in writing of the tenant's intention to withhold from the monthly rent an amount which reasonably reflects the reduced value of the premises due to the material noncompliance.  If the landlord fails to correct the condition within 14 days after being notified by the tenant in writing, 
the tenant may, 
during the time such failure continues
, 
deduct
 
from the rent the stated amount."  (Emphasis added).  Chicago Municipal Code § 5-12-110(d) (amended November 6, 1991). 

On June 20, 1995, Powell sent a "REQUEST FOR REPAIRS" to Metroplex pursuant to section 5-12-110(d).  Powell's request letter advised Metroplex of his intent to withhold rent if Metroplex failed to correct 38 defects in his apartment and the common areas of the building within 14 days.  These defects included, 
inter
 
alia
, malfunctioning or missing emergency lighting, smoke detectors, and fire extinguishers in violation of the Chicago Municipal Code.  Metroplex received this letter on June 22, 1995.  Under the RLTO, Powell could begin to withhold rent 15 days after June 22, on July 7.

On June 23, 1995, Powell faxed a note to Stephanie Fields, an employee of Metroplex, confirming Metroplex's scheduled maintenance work on June 26.  On June 28, 1995, Powell again faxed a note to Fields, expressing his concern over the unfinished maintenance work: "The painters did not paint the bathroom door.  Could you have them come back and do some touch-ups when I'm home?"  

That same day, Fields responded: 

"With the exception of the water pressure in the shower, we have completed the maintenance required in your apartment.  We have contacted C.A.M. pipe clearing company to look at the shower.  They will be here on Friday afternoon [June 30, 1995].  If any touch-up paint is required, the painters will come up then as well."

On June 29, 1995, Powell faxed another note to Fields: "I will not be home Friday.  I have an appointment.  You will have to reschedule."  That same day, Powell also sent a "RENT LETTER" in which he explained to Metroplex his decision to withhold rent and enclosed a reduced rent check for $443.25.  Donald Cole, a Metroplex employee, admitted he received this letter, but did not specify a date.

On July 7, 1995, Powell wrote a letter to Fields: 

"Per our conversation this morning ***.  You stated that I was not home, 7-5-1995 when the painters were to come and do some unfinished work.  We agreed they would come between 8:30 and 9:00 A.M. on the 5th of July.  I was home until 12:30 P.M.  You also stated, that you would let me know, before the end of this day 7-7-1995, if they can come on Monday [July 10, 1995].

I also requested new kitchen cabinets several years ago.  You have tried several times to repair the ones I have to no avail.  As I stated this morning after twenty-one years, I need new cabinets.

If you have any questions you can contact me ***."

That same day, Metroplex sent written notice to Powell, pursuant to the forcible entry statute, demanding Powell pay the balance of his rent within five days.  During these five days, Powell paid only $57.75, leaving an unpaid rent balance of $167, or 25% of his rent.  On July 18, 1995, Metroplex filed a forcible entry claim to regain possession of Powell's apartment.

After two unsuccessful pleading attempts, Powell filed his second amended affirmative defense and counterclaim.  Powell's affirmative defense asserted Metroplex's forcible entry claim was retaliation for Powell's complaints, and therefore was violative of the RLTO.  In his affirmative defense, Powell included a prayer for damages under the ordinance.  Powell's counterclaim also sought damages for Metroplex's retaliatory eviction, as well as a refund of overpaid rent for Metroplex's breach of the implied warranty of habitability.

Metroplex filed a motion for summary judgment on its forcible entry claim and a motion to strike and dismiss Powell's affirmative defense and counterclaim.  On August 26, 1996, the trial court granted both Metroplex's summary judgment motion and its motion to strike and dismiss.  On October 15, 1996, the court denied Powell's motion to reconsider.  This appeal followed.

DECISION

First, Powell argues the trial court should not have granted summary judgment to Metroplex on its forcible entry claim.  The trial court granted summary judgment, despite Powell's retaliatory eviction charges, because he failed to allow Metroplex 14 days to make repairs before withholding rent, as required by the RLTO.

Initially, Powell contends Metroplex waived its argument on the issue of whether Powell allowed Metroplex 14 days to make repairs.  Powell contends Metroplex failed to raise this issue in response to Powell's affirmative defense and counterclaim.  However, Metroplex could raise this issue in its motion for summary judgment.  See 
Cannon v. Bryant
, 196 Ill. App. 3d 891, 554 N.E.2d 489 (1990).  There was no waiver.

Powell contends he allowed Metroplex 14 days to make repairs.  He says the 14 day period stretches between the day the landlord receives notice the tenant intends to withhold rent and the day the landlord receives a reduced rent payment.  Metroplex contends the 14 day period stretches between the day the landlord receives notice the tenant intends to withhold rent and the day the tenant sends a reduced rent payment.  

The trial court agreed with Metroplex and held Powell withheld rent when he sent his reduced rent check to Metroplex on June 29, a mere seven days after Metroplex received his request for repairs.

    Appellate review of an order granting summary judgment is 
de novo
.  
Kotarba v. Jamrozik
, 283 Ill. App. 3d 595, 669 N.E.2d 1185 (1996).  This court must consider anew the facts and the law related to a case in determining whether the trial court correctly decided no genuine issues of material fact were present and the moving party was entitled to judgment as a matter of law.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 649 N.E.2d 1323 (1995); 
Deloney v. Board of Education of Thornton
, 281 Ill. App. 3d 775, 666 N.E.2d 792 (1996).  We may affirm summary judgment for any grounds which properly appear in the record, regardless of whether the trial court relied on those same grounds.  
Leavitt v. Farwell Tower Ltd. Partnership
, 252 Ill. App. 3d 260, 625 N.E.2d 48 (1993).

Statutory interpretation is a question of law properly resolved in a summary judgment proceeding.  
Plambeck v. Greystone Management
, 281 Ill. App. 3d 260, 666 N.E.2d 670 (1996) (interpreting the RLTO).  If the ordinance is clear and unambiguous, this court will not resort to extrinsic rules of construction.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 561 N.E.2d 656 (1990).  However, if the ordinance is capable of more than one reasonable reading, this court will use rules of construction to resolve the ambiguity.  
People v. Jameson
, 162 Ill. 2d 282, 642 N.E.2d 1207 (1994).  

This court applies the same rules used to interpret statutes  as it does to interpret municipal ordinances.  
In re Application of County Collector
, 132 Ill. 2d 64, 547 N.E.2d 107 (1989).  The fundamental rule in interpreting an ordinance remains giving effect to the intent of the legislature.  
Kraft, Inc.
,
 138 Ill. 2d at 189.  The best evidence of this intent comes from the language of the ordinance itself (
Szpila v. Burke
, 279 Ill. App. 3d 964, 665 N.E.2d 357 (1996)(interpreting the RLTO)), but may also include consideration of the reason behind and the necessity for the ordinance (
Meyer v. Cohen
, 260 Ill. App. 3d 351, 632 N.E.2d 22 (1993) (interpreting the RLTO)).  Further, "the relevant language must be read within the context of the entire provision of which it forms an integral part."  
Illinois Wood Energy Partners v. County of Cook
, 281 Ill. App. 3d 841, 850, 667 N.E.2d 477, 483 (1995).

The RLTO does not contain a provision concerning how and when a tenant must notify a landlord of a deduction in rent.  Here, both Metroplex's and Powell's interpretations are reasonable, and the RLTO ambiguous on this point.

A key element of a valid lease is a provision governing the time and manner of rent payment.  
Chapman v. Brokaw
, 225 Ill. App. 3d 662, 588 N.E.2d 462 (1992).  The lease between Metroplex and Powell reflects their understanding of when and where payment occurs: "*** Tenant agrees to pay the monthly rent *** on the date the rent is due [the first of the month] at the Owner's address ***."  

Part of Powell paying rent is Metroplex receiving rent; part of Powell deducting rent is Metroplex receiving reduced rent.  As we have noted
 in discussing this section of the RLTO, "the tenant may *** deduct
 an appropriate amount, reflecting the reduced value of the premises, 
from each rental payment
."  (Emphasis added).  
Reed v. Burns
, 238 Ill. App. 3d 148, 153, 606 N.E.2d 152, 155 (1992).     

This court has addressed a similar provision of the RLTO.  Before its 1991 amendment, the RLTO provided:

"[T]he tenant may give written notice to the landlord *** and request that [the invalid lease] be cured.  The landlord shall cure the violation by tendering to the tenant within 15 days a new lease ***.  In the event that the landlord fails to cure the violation the tenant may terminate the rental agreement by written notice."  
See 
Plambeck
, 281 Ill. App. 3d at 269-70.

In 
Plambeck
, the court held once the tenant has alerted the landlord to the invalid lease, the tenant "need only provide the landlord with written notice of termination ***."  
Plambeck
, 281 Ill. App. 3d at 270.  Before terminating the lease, the tenant must provide the landlord, and the landlord must receive, two written notices: the written notice of the violation, and the written notice of the termination after 15 days.  
Plambeck
, 281 Ill. App. 3d at 270; but see also 
Sjostrom & Sons, Inc. v. D. & E. Mall Restaurant
, 
Inc.
, 29 Ill. App. 3d 1082, 332 N.E.2d 62 (1975)(notice of termination under lease provision effective when sent).

We conclude the tenant withholds or deducts rent under the ordinance when the landlord receives partial payment.  Admittedly, while the tenant in a sense deducts rent at the moment of writing a reduced rent check, this action does not operate in a vacuum.  Deducting rent is meaningless unless and until the landlord becomes aware of it.

   In this case, the RLTO required Powell send and Metroplex receive two notices: the notice of intent to deduct rent (Powell's June 20 request letter), and the notice of the deducted rent (Powell's June 29 rent deduction letter).  The record does not clearly tell us when Metroplex received Powell's rent deduction letter.  Powell sent his request letter on Tuesday, June 20, 1995, and it reached Metroplex two mail-days later on Thursday, June 22.  Powell sent his rent deduction letter on the following Thursday, June 29, 1995.  

Powell asks this court to conclude his rent deduction letter did not reach Metroplex until Wednesday, July 5 at the earliest--four mail-days later, excluding Sunday, July 2 and Tuesday, July 4.  In order for Powell's rent letter to comply with the RLTO, Metroplex must have received this letter no sooner than 15 days after June 22: Friday, July 7--six mail-days after Powell sent his rent letter.  We believe the strong likelihood is that Metroplex received the rent deduction letter before July 7--too early to conform to the requirement of the RLTO. 

If determining the date Metroplex received the rent deduction letter were the controlling issue, we would stop at this point and remand the case for trial on that issue.  However, even assuming Metroplex received Powell's rent letter on July 7 or thereafter, the date Metroplex received the rent letter does not necessarily determine whether Powell complied with the 14 day period under the RLTO.

While Powell offers a correct interpretation of when the tenant deducts rent under the RLTO, both parties have failed to grasp the clear meaning of section 5-12-110(d).  Though deducting occurs when the landlord receives a reduced rent payment, the tenant cannot deduct rent until the landlord has received written notice of the tenant's intent to deduct rent, and has had a full 14 day opportunity during which to make requested repairs.  In other words, once the landlord had received this opportunity, the RLTO allows the tenant to 
begin
 deducting rent on the 15th day, that is, "during the time such failure [to repair] continues."  Chicago Municipal Code § 5-12-110(d).  

In Powell's case, he notified Metroplex of his intent to deduct rent on June 22.  Under the RLTO, Powell could begin to deduct rent 15 days later, on July 7, if Metroplex failed to complete the requested repairs.  But Powell sent his reduced rent payment on June 29.  Thus, regardless of whether Powell deducted rent when he sent his reduced rent check or when Metroplex received his check, Powell deducted rent for a period of time--July 1-6--during which Metroplex could still make repairs.

Under the RLTO, the tenant cannot deduct rent until the 14 day period expires; the landlord gets these 14 days free.  Without this reading, the tenant can deduct rent for a period of time in which the landlord still has a chance to make repairs.

The forcible entry statute provides a cogent analogy.  Before filing a forcible entry claim, a landlord must notify a tenant in writing, "that unless payment [of delinquent rent] is made *** not less than five days after service [of such notice]," a forcible entry action will commence.  Illinois courts have uniformly held this notice does not become effective until received by the tenant.  See 
Avdich v. Kleinert
, 69 Ill. 2d 1, 9, 370 N.E.2d 504, 508 (1977); 
Jeffreys v. Hart
, 197 Ill. App. 514 (1916).  Additionally, the landlord may not initiate a forcible entry claim until the five day period expires.  See 
Hopkins v. Levandowski
, 250 Ill. 372, 95 N.E. 496 (1911)
; see also 
Robinson v. Chicago Housing Authority
, 54 F.3d 316 (7th Cir. 1995) (applying Illinois law)("the specified time period mentioned in the notice must pass without tender of payment by the tenant").  Similarly, under the RLTO, Powell did not withhold rent until Metroplex received his reduced rent check.  However, Powell could not withhold rent until the 14 day period expired.

This court also must abide by the primary rule of statutory  construction--to give effect to the intent of the legislature, here, the Chicago City Council.  The city council expressed that intent in the RLTO:

   "It is the purpose of [the RLTO], in order to protect and promote the public health, safety and welfare of its citizens, to establish' the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and tenant to maintain and improve the quality of housing."  Chicago Municipal Code § 5-12-010.  

The city council also said the RLTO "should be liberally construed and applied to promote its purposes and policies."  Chicago Municipal Code § 5-12-010.  Accord 
Freidman v. Krupp Corp.
, 282 Ill. App. 3d 436, 443, 668 N.E.2d 142, 147 (1996)(RLTO should be liberally construed as a remedial ordinance); but see 
 
Szpila
, 279 Ill. App. 3d at 971 (RLTO should be strictly construed as a penal statute).

In light of the RLTO's purpose to improve rental housing, as well as the city council's expression of the proper approach to construing and applying the RLTO, the tenant must give the landlord a 14 day opportunity to make repairs.  Powell failed to give Metroplex a full 14 days because he withheld rent for a period in July during which Metroplex could still make repairs.  In short, Powell did not comply with the RLTO.

At oral argument, Powell asked us to disregard his apparent failure to bring himself within the time limits established by the RLTO.  He contended the time limits are directory and cannot defeat the clear policy of the ordinance--to protect tenants from indifferent landlords.

In effect, Powell asks us to rewrite the RLTO, to add words not inserted by the City Council.  We believe, however, this court must resist the temptation to rewrite an ordinance in order to reflect life as we might think it should be.  If the City Council did not intend the provisions of its ordinance to be binding on landlords and tenants, it could have said so.

Our conclusion that Powell did not follow the strict terms of the ordinance does not resolve the case.  We must examine the trial court's order striking Powell's affirmative defense and counterclaim.

Powell's affirmative defense, entitled "Retaliatory Conduct," asserted the RLTO prohibited Metroplex from filing a forcible entry claim against Powell merely because he invoked his rights as a tenant.  The affirmative defense also asked for damages under the RLTO. 

The RLTO provides:

"*** A landlord may not knowingly terminate a tenancy, decrease services, bring or threaten to bring a lawsuit against a tenant for possession or refuse to renew a lease or tenancy because the tenant has 
in good faith
:

 ***

(d) requested the landlord to make repairs to the premises as required by a building code ***; or

* * *

(g) exercised any right or remedy provided by law.

*** In an action by or against the tenant, if there is evidence of tenant conduct protected herein within one year prior to the alleged act of retaliation, that evidence shall create a rebuttable presumption that the landlord's conduct was retaliatory."  (Emphasis added.)  Chicago Municipal Code § 5-12-150.

Powell's June 20 request letter was protected conduct.  Metroplex filed its forcible entry claim less than one month after receiving Powell's request letter.  Additionally, the record reveals other facts which lend support to Powell's assertion of retaliation.  Powell had lived in this building for nearly 25 years, but Metroplex quickly moved to evict him once he withheld $167, or a mere 25%, of his $668 rent.  Metroplex also filed forcible entry claims against six other tenants of this building who requested repairs.

The trial court struck this affirmative defense, ruling Powell could not complain of retaliatory conduct because he did not comply with the RLTO:

"I'd also like to call your attention to the fact that the defendant has contended that the plaintiff's conduct was retaliatory, and I submit to you that the defendant, in reference to the facts in this particular case, place[s] [himself] in the precarious position of not complying with the Residential Landlord and Tenants Ordinance, that [he] relied upon, and, by not giving the plaintiff the requisite minimum number of days to cure, that the--and that would be at least 14 days--that [he] cannot complain of retaliatory conduct.

This is a case for nonpayment of rent, and that takes it out of the realm of retaliatory conduct. 

* * *

*** [P]ossibly, were it not for the fact that the tenant had prematurely indicated that the reduced rent was to commence prior to the expiration of the 14 days, then the defendant may have had a valid retaliatory conduct case against the plaintiff."

Although we conclude Powell did not comply with the RLTO's rent withholding provision, we disagree with the trial court dismissal of Powell's retaliatory eviction affirmative defense.  Considering the dearth of relevant case law construing the rent withholding provision of the RLTO, Powell's request for repairs and his withholding of rent create a "good faith" fact issue.  Conduct protected by the ordinance creates a presumption of retaliation.  Metroplex addressed the issue in its summary judgment motion with a blanket denial.

Summary judgment is inappropriate if the moving party cannot demonstrate the absence of a factual dispute with respect to all issues raised by the pleadings, including the non-moving party's affirmative defense.  
Old Kent Bank v. Surwood Corp.
, 256 Ill. App. 3d 221, 627 N.E.2d 1192 (1994); 
West Suburban Mass Transit District v. Consolidated Rail Corp.
, 210 Ill. App. 3d 484, 569 N.E.2d 187 (1991).  Summary judgment was inappropriate here because a triable issue of fact exists: whether Metroplex's putative reason for evicting Powell--nonpayment of rent--was a mere pretext to evict a troublemaker.

Powell contends the trial court should not have dismissed his second amended affirmative defense and counterclaim as not germane to Metroplex's forcible entry claim.

A motion to dismiss under section 2-615 "tests the legal sufficiency of a pleading and a court must accept all well-pleaded facts as true."  
Doe v. Calumet City
, 161 Ill. 2d 374, 381, 641 N.E.2d 498, 503 (1994).  On appeal, the standard of review for a section 2-615 dismissal is 
de
 
novo
.  
Hough v. Kalousek
, 279 Ill. App. 3d 855, 665 N.E.2d 433 (1996).

Powell's affirmative defense presented his retaliatory eviction argument and asked for money damages under the RLTO.  Powell's counterclaim presented two counts: "Retaliatory Conduct" and "Breach of the Implied Warranty of Habitability."  The retaliatory eviction count tracked the affirmative defense and asked for damages under the RLTO.  The breach of implied warranty count asked for a refund of overpaid rent. 

A forcible entry and detainer action is a limited proceeding, focusing on the central issue of possession.  
Foster v. Foster
, 273 Ill. App. 3d 106, 652 N.E.2d 350 (1995).  The forcible entry and detainer statute provides:

"On complaint by the party or parties entitled to possession of such premises ***, stating that such party is entitled to the possession of such premises ***, and that the defendant *** unlawfully withholds the possession thereof from him, her or them, the clerk of the court shall issue a summons.

The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action.  No matters not 
germane
 to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise."  (Emphasis added).  735 ILCS 5/9-106 (West 1992).

In short, matters germane to a forcible entry claim may be introduced by the defendant through affirmative defenses or counterclaims.  
Oak Park Trust & Savings Bank v. Village of Mount Prospect
, 181 Ill. App. 3d 10, 536 N.E.2d 763 (1989).

"Claims which are germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; or (4) claims questioning the plaintiff's motivation for bringing the action."  
People ex rel. Department of Transportation v. Walliser
, 258 Ill. App. 3d 782, 788, 629 N.E.2d 1189, 1194 (1994); accord 
Oak Park Trust
, 181 Ill. App. 3d at 23.  A retaliatory eviction claim is germane to a forcible entry action and states a defense.  
Clore v. Fredman
, 59 Ill. 2d 20, 27, 319 N.E.2d 18, 21-22 (1974)("If, in fact, the landlord's action is retaliatory, the landlord is not entitled to possession of the property and the action cannot be maintained.")  Breach of the implied warranty of habitability claims also are germane.  
Jack Spring, Inc. v. Little
, 50 Ill. 2d 351, 280 N.E.2d 208 (1972)
.

While his affirmative defense and both counts of his counterclaim were germane, Powell asked for monetary damages, attorney fees, and costs.  Counterclaims seeking money damages are not germane to forcible entry claims.  
Walliser
, 258 Ill. App. 3d at 788.  Our supreme court has defined germane as closely related, relevant, or pertinent.  
Rosewood Corp. v. Fisher
, 46 Ill. 2d 249, 263 N.E.2d 833 (1970).  As we have said in a similar context involving a municipal rental housing ordinance, "presumably, any matter arising under *** the Village Ordi
nance would be germane to the issue of whether the landlord is entitled to possession or rent."  
Oak Park Trust
, 181 Ill. App. 3d at 23.

The ordinance here specifically provides for damages from retaliatory eviction defenses and claims: "The tenant has a defense in any retaliatory action against him for possession and is entitled to *** an amount equal to and not more than two months' rent or twice the damages sustained *** and reasonable attorney fees."  Chicago Municipal Code § 5-12-150.  We see no good reason to allow Powell to argue retaliatory eviction under the RLTO, but not to allow him to pursue remedies specifically provided in the RLTO.  Powell's affirmative defense and count I of his counterclaim are germane to Metroplex's forcible entry claim and should not have been dismissed. 

Powell correctly contends the RLTO does not abolish the common law implied warranty of habitability.  The RLTO provides: 

"To the extent that this chapter provides no right or remedy in a circumstance, the rights and remedies available to landlords and tenants under the laws of the State of Illinois or other local ordinances shall remain applicable."  Chicago Municipal Code § 5-12-190.

Where the RLTO fails to provide tenant rights, the implied warranty of habitability still exists.  
Cf.
 
Nottage v. Jeka
, 172 Ill. 2d 386, 667 N.E.2d 91 (1996)(legislature must abolish common law cause of action with plain language); 
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 489 N.E.2d 1374 (1986).

However, Powell's implied warranty counterclaim is not germane to Metroplex's forcible entry claim because it seeks money damages independent of the RLTO.

CONCLUSION

The trial court erred in granting summary judgment to Metroplex because a triable issue of fact exists on Powell's affirmative defense of retaliatory eviction.  
The trial court erred in striking and dismissing Powell's retaliatory eviction affirmative defense and counterclaim.  The trial court correctly dismissed Powell's implied warranty of habitability counterclaim.

Affirmed in part, reversed and remanded in part.

McNAMARA and BURKE, JJ., concur.