MAURICE AVENAIM, Plaintiff-Appellant, v. SHEA LUBECKE *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—03—1507

Opinion filed March 30, 2004.

Mora, Baugh, Waitzman & Unger, L.L.C., of Lincolnshire (Timothy C. Culbertson, of counsel), for appellant.

Robert W. Hallock, of Barrington, for appellees.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Maurice Avenaim appeals from an order of the circuit court denying his motion for reconsideration following a bench trial in which the trial court concluded that a resulting trust existed in favor of defendant[1] Shea Lubecke with respect to certain real estate located at 603 South Hough Street, Barrington, Illinois, and that she was entitled to possession of the property. On appeal, Avenaim contends that the trial court erred in concluding that a resulting trust existed in favor of Lubecke, erred in not concluding that Lubecke's claim was barred by *laches*, and erred in apportioning the parties' interests in the property. For the reasons set forth below, we vacate the trial court's order and remand.

---

[1]Although both Shea Lubecke and her husband, Thomas, were originally involved in the transaction, they divorced in May 2000 and Thomas is not a party to this appeal. However, because both were involved in the original transaction, they are referred to collectively as defendants when the original transaction is discussed. Otherwise, the designation of Lubecke refers to Shea only.

## STATEMENT OF FACTS

This appeal arose from a real estate transaction involving Avenaim and defendants with respect to the property located at 603 South Hough Street. The parties disputed the nature of the transaction. Avenaim maintained, in his complaint for possession filed September 20, 2002, pursuant to the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9—101 *et seq.* (West 2000)), that the transaction was a lease between him and defendants with an option to purchase. Conversely, Lubecke maintained that Avenaim held the property in trust for her, a resulting trust, which she set forth as an affirmative defense in her answer to Avenaim's complaint.

At a bench trial held on January 21, 2003, Avenaim testified with respect to the circumstances leading to the transaction. Defendants entered into a real estate contract on July 8, 1987, with the owner of the property for a purchase price of $127,500.[2] According to Avenaim, because defendants ultimately were not able to purchase the property as provided for by the contract since they could not obtain a mortgage, they came to him. Avenaim saw the opportunity to purchase the property as an investment since he already had six to seven properties, some of which were rental properties. Avenaim testified that the parties agreed he would purchase the property and be responsible for all payments. In this regard, defendants assigned the July 8 real estate contract to Avenaim on August 5, 1987. Avenaim admitted that defendants paid $27,000 as a down payment and other costs attendant to the closing and he financed the balance, $101,000, through a trust mortgage and obtained a trust deed for the property.[3]

Avenaim further testified that exhibit No. 8 was his attorney's October 20, 1987, letter to defendants confirming the transaction. This letter stated that Avenaim agreed to purchase the property and obtain a mortgage, but that defendants agreed to pay the down payment. The letter further provided that "Mr. Avenaim has agreed that you would lease the property with an option to purchase." Thomas signed the acknowledgment on this letter. According to Avenaim, he gave defendants a three-year option to purchase the property at the

[2]Exhibit No. 1, the contract between defendants and the seller, was introduced at trial. This document is not part of the record on appeal. Avenaim also identified and introduced exhibit No. 4, which was apparently a real estate contract that he alone entered into with the seller for $127,350. This document, too, is not part of the record.

[3]At trial, Avenaim introduced exhibit No. 5, a trust agreement for the property dated October 1, 1987, in which he was the beneficiary. Again, this document is not part of the record. Similarly, exhibit No. 9, the mortgage in trust dated October 21, 1987, is not part of the record.

"fair trade value of the house." Avenaim also identified exhibit No. 11 (not part of the record), a document entitled "Real Estate Option Agreement" that his attorney had prepared. According to Avenaim, this document was for defendants' purpose to "have it in writing for themselves to secure their own interest that they could buy the property back from me at a given time and that the deposits which they put in would be part of the configuration at the end, that they would get it back as a credit." Avenaim also testified that he never received a signed copy of this document from defendants.

Avenaim further testified that the terms of the agreement were that if defendants failed to exercise the option within three years, they would lose it and forfeit the monies they had deposited. According to Avenaim, defendants originally made payments directly to him. However, during the pendency of defendants' divorce, Lubecke began making payments directly to Avenaim's bank account. Avenaim also stated that the amount of defendants' payments did not always equal the amount of his mortgage payment.

Avenaim then identified various letters he had written to Lubecke, including February 27, 1998, and June 22 and July 6, 2000. The February letter stated that Lubecke was in default for her February rent payment, and the letter was being forwarded to Avenaim's attorney to start eviction proceedings if the February and March payments were not made by March 10. Avenaim further stated in the letter that it was his intention to list the property for sale. The June letter stated that Avenaim received a notice that Lubecke's June rent check was returned for insufficient funds. Avenaim stated in the letter that a $50 late fee would be added to the "June rent payment," as well as a $10 fee for the bank charge to his account for her returned check. Avenaim further noted in the letter that Lubecke had a pattern of late payments or noncashable payments frequently for the past 10 years. According to Avenaim, this showed a lack of responsibility on Lubecke's part and was the reason he was only able to give her a month-to-month rental accommodation. Lastly, the July letter stated that Avenaim had not received Lubecke's June or July rent payment and she risked being evicted. Avenaim testified that Lubecke never responded to these letters. Avenaim further testified that over the 14-year period defendants and/or Lubecke resided in the home, he had sent approximately 25 to 30 such letters. According to Avenaim, defendants and/or Lubecke never made any claim to having an ownership interest in the home until this lawsuit.

Avenaim further testified that on July 11, 2001, he refinanced the property in the amount of $275,000, at which time he paid off the ap-

proximate $83,000 balance on the original mortgage.[4] Avenaim also identified exhibit No. 20 (not part of the record) as his landlord's insurance policy.

On August 5, 2002, Avenaim sent a letter of eviction to Lubecke, terminating her month-to-month tenancy, effective September 5. Avenaim commenced this lawsuit on September 20.

On cross-examination, Avenaim admitted that the total amount defendants had paid with respect to the property prior to the closing on the property was $30,882.66. Avenaim further stated that he suggested the three-year limit on the option to purchase when the parties first discussed and entered into the transaction. According to Avenaim, after he sent the "Real Estate Option Agreement" to defendants, he followed up on it, and Thomas told him he had no money and no credit and, therefore, would not be able to buy the house back. Avenaim further testified that defendants sometimes paid the insurance on the property, but did not do so all the time. In addition, Avenaim stated that defendants did not directly pay the real estate taxes, but did do so as part of their rental payments. Avenaim then rested.

Thereafter, Lubecke testified on her own behalf. She stated that she had resided at the Hough address since December 1987. She further stated that Thomas signed the October 20, 1987, letter on her behalf. According to Lubecke, in the parties' initial discussions, because Avenaim was concerned about capital gains, he agreed to purchase the property and then transfer it to defendants for the amount of the original purchase contract. However, Lubecke then responded to her attorney's next question as follows:

> "Q. Had Mr. Avenaim and you and your husband agreed that you would have an option to purchase the property?
> A. Yes."

Lubecke denied that either she or Thomas and Avenaim ever agreed to limit the number of years on the option contract. Lubecke also denied that Avenaim ever advised her that the option had expired.

Lubecke further testified that in May 2000, during the course of her divorce, she attempted to exercise the option, pursuant to a letter to Avenaim. According to Lubecke, Avenaim responded that "of course it's [y]our property" and that Thomas should receive his fair share of it in the divorce. Lubecke also testified that Avenaim stated the three of them needed to talk with respect to how to turn the property over to defendants.

Lubecke further testified that since October 1987, she had paid

---

[4]Again, although this document was introduced as evidence at trial, it is not part of the record.

approximately $222,000 in "so-called" rent. In this regard, she identified defendant's exhibit No. 2 (not part of the record), her spreadsheet, showing that she had expended a total of $250,675.07 on the property. Lubecke also testified that defendant's exhibit No. 3 (not a part of the record) showed the maintenance and expenditures for maintenance she had made on the property, including a new furnace and two new water heaters, in the approximate amount of $51,000.

On cross-examination, Lubecke admitted that the last payment she made to Avenaim was September 5, 2002, or at the inception of this lawsuit. Lubecke further admitted that she did not bring her cancelled checks for maintenance or her payments to Avenaim to court, but stated she had most of them. Lubecke also stated that, at some time, she sent a letter to Avenaim with respect to repairs needed to be made on the house. She further stated that she subsequently paid for them. Lubecke also admitted that, with respect to her May 16, 2000, divorce decree, there was a paragraph stricken that stated neither of the parties (Shea or Thomas) had any interest in any real estate. According to Lubecke, this paragraph was stricken because it was incorrect. The decree was then admitted into evidence, but is not a part of the record here. Lubecke then rested. The trial court took the matter under advisement and allowed the parties to file posttrial briefs.

On February 2, both parties submitted posttrial briefs to the court. Avenaim argued that Lubecke was barred by *laches* from asserting any interest in the property.

On February 24, 2003, the trial court entered its judgment order. The court set forth seven specific findings, the following of which are set forth verbatim:

"1. On July 8, 1987, the defendant [Shea] and her then spouse [Thomas] contracted to purchase the property commonly known as 603 S. Hough Street ***. The defendant and her spouse were not able to obtain a mortgage and *the plaintiff* [Avenaim] *agreed that he would obtain a mortgage in his name for the benefit of the defendant and her spouse.*

2. The purchase *** closed on October 21, 1987 ***. As of the Closing Date, *the plaintiff and the defendant understood and intended that the plaintiff would not have any beneficial interest in the Property.*
***

4. As of the Closing Date, the plaintiff and the defendant understood and intended that *the defendant was obligated to pay the remainder of the purchase price of the Property.* The defendant *made payments equal to the mortgage payments* on the property ***. Since the Closing Date, *the defendant paid the real estate taxes*

*on the Property and paid for all improvements to and maintenance on the Property.*

5. On the Closing Date, *the plaintiff, solely as an accommodation to the defendant, obtained in the plaintiff's name a mortgage on the Property. \*\*\* The defendant made all payments on the Original Mortgage from October 21, 1987 through August 2002.*" (Emphasis added).

Based upon these findings, the trial court concluded, by virtue of a resulting trust, Lubecke was the beneficial owner of the property and found that she was entitled to possession of the property.

Avenaim's subsequent motion for reconsideration of the February 24, 2003, judgment was denied. This appeal followed. On May 28, the trial court entered an order, by agreement of the parties, to stay its judgment pending this appeal.

## ANALYSIS

■ Our standard of review with respect to a trial court's denial of a motion to reconsider is as follows:

" 'The decision to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. [Citation.] The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. \*\*\*' [Citation.]" *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 729, 771 N.E.2d 1100 (2002).

Thus, the question before us is whether the trial court here erred in applying the law of resulting trusts. "The standard of review we apply when a challenge is made to the trial court's ruling following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154, 746 N.E.2d 827 (2001). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp.*, 321 Ill. App. 3d at 154.

■ A forcible entry and detainer action is a limited proceeding that determines the issue of who is entitled to immediate possession. *American National Bank v. Powell*, 293 Ill. App. 3d 1033, 1044, 691 N.E.2d 1162 (1997). Forcible entry actions are summary, statutory proceedings, and "[a] court hearing a forcible entry and detainer claim is considered 'a court of special and limited jurisdiction.' [Citation.]" *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971, 632 N.E.2d 80 (1994). "Matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action." *Yale Tavern, Inc.*, 259 Ill. App. 3d at 971. However, those matters

germane to such a claim may be raised. *Powell*, 293 Ill. App. 3d at 1044. " 'Claims which are germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; or (4) claims questioning the plaintiff's motivation for bringing the action.' [Citations.]" *Powell*, 293 Ill. App. 3d at 1044. Title disputes, particularly serious title disputes, cannot be determined in a forcible entry and detainer proceeding. *Continental Illinois National Bank & Trust Co. of Chicago v. Wilson*, 103 Ill. App. 3d 357, 360, 431 N.E.2d 1334 (1982); *Kitzer v. Rice*, 90 Ill. App. 2d 72, 77, 234 N.E.2d 115 (1967); *Layzod v. Martin*, 305 Ill. App. 1, 4-5, 26 N.E.2d 423 (1940). But see *Wood v. Wood*, 284 Ill. App. 3d 718, 722, 672 N.E.2d 385 (4th Dist. 1996) (although stating that forcible entry and detainer actions are to determine possession, not title, the court nonetheless allowed a determination of ownership on the basis it was germane to the action); *Rodriguez v. Owaynat*, 137 Ill. App. 3d 1017, 1021-22, 485 N.E.2d 438 (1985) (although stating that serious title disputes are not properly resolved in forcible entry and detainer actions, the court also stated that evidence of ownership may be germane to the issue of possession).

■ Because the instant case involves a serious title dispute, the trial court should not have made a determination of title based on the Act. Exacerbating the fact that this proceeding was not the appropriate place to ascertain title is the fact that Lubecke did not properly raise the issue. A counterclaim is to be used when a defendant seeks affirmative relief. *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 393, 680 N.E.2d 283 (1997). An answer or affirmative defense merely seeks to defeat the plaintiff's claim. *Norman A. Koglin Associates*, 176 Ill. 2d at 393. Lubecke raised the question of title, *i.e.*, through a resulting trust, in her affirmative defense. However, Lubecke was actually seeking affirmative relief from the court, which relief should have been sought by way of a counterclaim.

Thus, we note that not only was the issue of title not properly raised, but it was not properly determined in this proceeding. Despite the trial court's error in adjudicating title in this action, we nonetheless address the substantive issue raised in the interests of judicial economy and because neither party, particularly Avenaim, objected to the trial court's decision to adjudicate title.

Avenaim contends that the trial court's judgment was against the manifest weight of the evidence and, therefore, it erred in denying his motion to reconsider. Specifically, Avenaim maintains that the evidence

presented by both parties clearly demonstrated that they intended something other than a resulting trust, *i.e.*, a lease with an option to purchase. According to Avenaim, both of the parties' testimony demonstrated that the transaction constituted a lease with an option to purchase. Avenaim maintains that while the parties' testimony differs on the details of the option, there was no conflict as to the fact that it was in fact a lease with an option. Avenaim further argues that it is not legally or conceptually possible to both own a property and to retain the option to purchase it. Ultimately, Avenaim maintains that because the transaction can reasonably be interpreted as something other than a resulting trust, the trial court's conclusion that it was in fact a resulting trust is against the manifest weight of the evidence.

Lubecke contends that the trial court's decision is not against the manifest weight of the evidence because its decision was reasonable. According to Lubecke, Avenaim cannot show that the trial court's seven findings were unreasonable. Lubecke also makes the argument, which we find unintelligible, that "the lease and an option does not compel the conclusion urged by the plaintiff. In fact, the lease and option can be viewed as an attempt to document the defendant's obligation to make the monthly payments under the original mortgage \*\*\* and the defendant's right to take title to the property upon payment of the outstanding balance of the original mortgage." Lubecke further maintains that the evidence demonstrated that she paid the down payment and made all mortgage payments on the property and, therefore, a resulting trust exists.

■ A resulting trust, or purchase money resulting trust, "arises where one person purchases property with his own funds and title is taken in the name of another." *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263, 272, 652 N.E.2d 1381 (1995). A resulting trust can arise only at the time of the conveyance, and "the payor's intention at that time determines whether a resulting trust may be found." *In re Estate of Koch*, 297 Ill. App. 3d 786, 788, 697 N.E.2d 931 (1998). "The courts will impose a resulting trust when the circumstances surrounding a conveyance, or the acts and expressions of the parties, make it clear that the parties intended such a result or raise the inference that the parties intended to create a trust." 90 C.J.S. *Trusts* § 134, at 261 (2002). "Central to the inquiry into whether a purchase money resulting trust exists are issues of who paid for the purchase and who was intended to beneficially enjoy the property. Such intention is to be determined from all the facts and circumstances." 90 C.J.S. *Trusts* § 147, at 273 (2002). As stated in *Hocking v. Hocking*, 76 Ill. App. 3d 29, 394 N.E.2d 653 (1979):

"In order for a resulting trust to arise, the payor does not have

to produce the consideration for the transfer at the time of the transfer, if the purchase price is deemed a loan to the payor, either of tangible assets or credit, and the payor is the party deemed by the legal title holder to be primarily responsible for the ultimate payment of the purchase price. [Citations.] In effect, the payment may be deferred, so long as the original intent of the parties is that the payor will ultimately furnish the consideration for the transfer." *Hocking*, 76 Ill. App. 3d at 35.

■ "The party seeking to establish the existence of a resulting trust bears the burden of proving it by clear and convincing evidence." *Koch*, 297 Ill. App. 3d at 788. As stated by the court in *Judgment Services Corp.*:

" 'Courts have defined "clear and convincing" evidence most often as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question. Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense.' [Citation.]" *Judgment Services Corp.*, 321 Ill. App. 3d at 156.

"A resulting trust will not be sustained where the transaction can be construed in any other reasonable fashion." *Judgment Services Corp.*, 321 Ill. App. 3d at 155. See also *Judgment Services Corp.*, 321 Ill. App. 3d at 159 ("If a reasonable explanation of the evidence adduced may be made upon any theory other than the existence of a resulting trust, that evidence is insufficient to establish a resulting trust").

■ The question here is whether Lubecke presented clear and convincing evidence that a resulting trust in her favor should be imposed. Although, in cases like this, factual determinations are best left to the trial court, if those determinations are not supported by the manifest weight of the evidence, we may overturn them. Applying the above principles with respect to resulting trusts, we find that the trial court's conclusion was against the manifest weight of the evidence, particularly since the evidence here is capable of another reasonable explanation.

Initially, we note that there are several errors with respect to the trial court's specific findings because there was no evidence to support the finding or because there was evidence that clearly contradicted the finding, which evidence was not controverted. Specifically, with respect to the trial court's first finding that "plaintiff [Avenaim] agreed that he would obtain a mortgage in his name for the benefit of the defendant" and its second finding that "plaintiff and the defendant understood and intended that the plaintiff would not have any beneficial interest in the property," these findings are not supported

by the evidence presented at trial. Avenaim himself testified that he viewed the purchase as an investment opportunity, like several other investment properties he owned. The inference to be drawn from this testimony is that Avenaim intended to benefit himself, not Lubecke. Moreover, there was no evidence presented that Lubecke expected or intended Avenaim to be a trustee on her behalf and no documentary evidence to support any such inference. See *Judgment Services Corp.*, 321 Ill. App. 3d at 157. There simply was no competent evidence that Avenaim purchased the property for the benefit of Lubecke. See *In re Estate of McCormick*, 262 Ill. App. 3d 163, 169, 634 N.E.2d 341 (1994).

Similarly, with respect to the trial court's fourth and fifth findings that Lubecke made all payments on the original mortgage, this is controverted by Avenaim's testimony, which Lubecke did not dispute or contradict, that not all of her payments were equal to the amount of the mortgage. If this is correct, as we must deem it so, then Lubecke did not make *all* the payments on the mortgage.

While a resulting trust could conceivably be inferred from certain evidence, including the fact Lubecke lived in the residence for 14 years, she paid the down payment and closing costs, she made monthly payments, she paid, through her monthly payments, real estate taxes, and she paid for maintenance and repairs on the property, we do not find this evidence sufficient to meet the heavy legal burden Lubecke bore. It has been stated that even if there is evidence that a resident paid for utilities and improvements and other expenses that would demonstrate an ownership interest in a property, such evidence is insufficient to meet the burden for one claiming a resulting trust. *Judgment Services Corp.*, 321 Ill. App. 3d at 157. Likewise, it has been stated that simply because one continues to enjoy the use of a property, this is not conclusive as to the intent to establish a resulting trust. *In re McCormick*, 262 Ill. App. 3d at 169.

The transaction here clearly is susceptible of another reasonable interpretation, *i.e.*, that Lubecke was leasing the property from Avenaim and had an option to purchase it at some point after Avenaim purchased it. The October 20, 1987, letter sent to defendants and signed by Thomas clearly states that defendants were leasing the property with an option to purchase it. If the parties intended defendants to have a beneficial or ownership interest in the property, there would be no reason to include such a provision in the letter, nor any reason for defendants to agree to it. Additionally, in this regard, Lubecke specifically testified at trial that she had a lease with an option to purchase the property. Moreover, the three letters introduced by Avenaim all stated that Lubecke was renting the property: two included eviction threats, and one included Avenaim's intent to put

the property up for sale. If Lubecke possessed a beneficial interest in the property, Avenaim would not have had a right to evict her and would not have had a right to put the property up for sale. Lubecke did not respond to any of these letters and, therefore, did not contest the fact that she was leasing the premises or state any understanding to the contrary. Lastly, Lubecke testified that the option was never limited and that Avenaim never advised her it had expired. In fact, Lubecke attempted to exercise the option in May 2000. As Avenaim argues, it is illogical to both hold an ownership interest in a property (based upon a resulting trust) and then to attempt to gain an ownership interest in it by exercising an option to purchase it. Clearly, the transaction in the instant case is susceptible of another reasonable interpretation and no resulting trust should be found. See *Judgment Services Corp.*, 321 Ill. App. 3d at 159 (reversing the trial court's finding of a resulting trust as against the manifest weight of the evidence because the defendant failed to meet her burden of proof and because the evidence was capable of another reasonable interpretation); *In re McCormick*, 262 Ill. App. 3d at 170 (same).

We therefore find that the trial court's determination that a resulting trust existed in favor of Lubecke was against the manifest weight of the evidence and it erred in its application of the law because Lubecke failed to present clear and convincing evidence of a resulting trust. Accordingly, we find that the trial court erred in denying Avenaim's motion to reconsider.

Based on our above determination, we need not address the other issues raised by Avenaim.

## CONCLUSION

For the reasons stated, we vacate the judgment of the circuit court of Cook County and remand this cause for further proceedings consistent with the Act.

Order vacated and remanded.

WOLFSON, P.J., and GARCIA, J., concur.